## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGHT TOWER RENTALS, INC., *et al.*,[1] | ) | Case No. 16-34284 (DRJ) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN

THIS CHAPTER 11 PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS CHAPTER 11 PLAN SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE EFFECTIVE DATE OF THIS PLAN ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

Patricia B. Tomasco (State Bar No. 01797600)
Matthew D. Cavenaugh (State Bar No. 24062656)
Jennifer F. Wertz (State Bar No. 24072822)
**JACKSON WALKER LLP**
1401 McKinney Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4242
Email: ptomasco@jw.com
       mcavenaugh@jw.com
       jwertz@jw.com

-and-

Philip M. Abelson
Ehud Barak
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Light Tower Rentals, Inc. (4893); LTR Holdco, Inc. (8813); LTR Shelters, Inc. (5396); and LTR Investco, Inc. (3819).  The location of the Debtors' service address is 2330 E. I-20 S. Service Rd., Odessa, TX 79766.

Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: pabelson@proskauer.com
          ebarak@proskauer.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

Dated:  August 22, 2016

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................6

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
OF TIME, GOVERNING LAW, AND OTHER REFERENCES.....................6
   A.     Defined Terms ...............................................................................6
   B.     Rules of Interpretation .................................................................16
   C.     Computation of Time ...................................................................17
   D.     Governing Law .............................................................................17
   E.     Reference to Monetary Figures....................................................17
   F.     Reference to the Debtors or the Reorganized Debtors.................17
   G.     Controlling Document ..................................................................17

ARTICLE II ADMINISTRATIVE, PROFESSIONAL AND PRIORITY TAX CLAIMS .........18
   A.     Administrative Claims ..................................................................18
   B.     [Reserved] ....................................................................................18
   C.     Professional Claims .....................................................................18
   D.     Priority Tax Claims ......................................................................19

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND
INTERESTS ...................................................................................................19
   A.     Classification of Claims and Interests.........................................19
   B.     Treatment of Classes of Claims and Interests.............................20
   C.     Special Provision Governing Unimpaired Claims ......................24
   D.     Elimination of Vacant Classes.....................................................25
   E.     Voting Classes; Presumed Acceptance by Non-Voting Classes..........................25
   F.     Intercompany Interests.................................................................25
   G.     Subordinated Claims ....................................................................25
   H.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code...................25

ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN .......................26
   A.     General Settlement of Claims and Interests.................................26
   B.     Sources of Consideration for Plan Distributions .........................26
   C.     The Equity Warrants ....................................................................28
   D.     Management Incentive Plan..........................................................29
   E.     Exit Facility..................................................................................30
   F.     Professional Fees and Expenses...................................................30
   G.     Exemption from Registration Requirements ...............................31
   H.     Corporate Existence .....................................................................31

I. Vesting of Assets in the Reorganized Debtors ..............................................32
J. Cancellation of Notes, Instruments, Certificates, and Other Documents ............32
K. New Organizational Documents .....................................................................33
L. Effectuating Documents; Further Transactions ...............................................33
M. Section 1146(a) Exemption ..........................................................................33
N. Directors and Officers .................................................................................34
O. [Reserved] ................................................................................................35
P. Incentive Plans and Employee and Retiree Benefits .......................................35
Q. Preservation of Rights of Action ...................................................................35
R. Restructuring Transactions ..........................................................................36

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ....................................................................................................37
A. Assumption of Executory Contracts and Unexpired Leases .............................37
B. Indemnification ........................................................................................37
C. Cure of Defaults and Objections to Cure and Assumption ..............................38
D. Contracts, Intercompany Contracts, and Leases Entered Into After the
Petition Date ............................................................................................39
E. Insurance Policies .....................................................................................39
F. Compensation and Benefits .........................................................................39
G. Rejection ..................................................................................................39
H. Nonoccurrence of Effective Date ..................................................................39
I. Reservation of Rights ..................................................................................40

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS .............................................40
A. Distributions on Account of Claims and Interests Allowed as of the
Effective Date ...........................................................................................40
B. Rights and Powers of Distribution Agent .......................................................40
C. Special Rules for Distributions to Holders of Disputed Claims and
Interests ..................................................................................................41
D. Delivery of Distributions .............................................................................41
E. Claims Paid or Payable by Third Parties ........................................................44
F. Setoffs .....................................................................................................44
G. Allocation Between Principal and Accrued Interest .........................................45

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND
INTERESTS ...............................................................................................45
A. Disputed Claims Process .............................................................................45
B. Claims Administration Responsibilities .........................................................45
C. Adjustment to Claims Without Objection .......................................................46
D. No Interest ...............................................................................................46

iv

| | | | |
|---|---|---|---|
| | E. | Disallowance of Claims and Interests | 46 |

**ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN** .............................................46

| | A. | Discharge of Claims and Termination of Interests | 46 |
|---|---|---|---|
| | B. | Releases by the Debtors | 47 |
| | C. | Releases by Holders of Claims and Interests | 47 |
| | D. | Exculpation | 48 |
| | E. | Injunction | 48 |
| | F. | Protection Against Discriminatory Treatment | 49 |
| | G. | Recoupment | 49 |
| | H. | Document Retention | 49 |
| | I. | Reimbursement or Contribution | 49 |
| | J. | Release of Liens | 50 |

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .............................50

| | A. | Conditions Precedent to the Effective Date | 50 |
|---|---|---|---|
| | B. | Waiver of Conditions Precedent | 52 |
| | C. | Effect of Non-Occurrence of Conditions to Consummation | 52 |

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ..........52

| | A. | Modification of Plan | 52 |
|---|---|---|---|
| | B. | Effect of Confirmation on Modifications | 53 |
| | C. | Withdrawal of Plan | 53 |

**ARTICLE XI RETENTION OF JURISDICTION** ..........................................................53

**ARTICLE XII MISCELLANEOUS PROVISIONS** ........................................................55

| | A. | Immediate Binding Effect | 55 |
|---|---|---|---|
| | B. | Additional Documents | 55 |
| | C. | Payment of Statutory Fees | 55 |
| | D. | Reservation of Rights | 55 |
| | E. | Successors and Assigns | 55 |
| | F. | Service of Documents | 56 |
| | G. | Term of Injunctions or Stays | 56 |
| | H. | Entire Agreement | 56 |
| | I. | Plan Supplement Exhibits | 57 |
| | J. | Non-Severability | 57 |
| | K. | Votes Solicited in Good Faith | 57 |
| | L. | Closing of Chapter 11 Cases | 57 |
| | M. | Waiver or Estoppel | 57 |

## INTRODUCTION

Light Tower Rentals, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases jointly propose this Plan. Capitalized terms used in the Plan shall have the meanings set forth in <u>Article I.A</u> of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors seek to consummate the Restructuring Transactions on the Effective Date of the Plan or as soon as practicable thereafter. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in <u>Article III</u> of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

## ARTICLE I

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### A.   <u>Defined Terms</u>

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

3.      "*Allowed*" means, as to a Claim or an Interest, a Claim or an Interest allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable. For the avoidance of doubt, (a) there is no requirement to file a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim under the Plan, and (b) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable nonbankruptcy law.

4.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

5.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas – Houston Division or such other court having jurisdiction over the Chapter 11 Cases.

6.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United

States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

7.      "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

8.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

9.      "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

10.      "*Certificate*" means any instrument evidencing a Claim or an Interest.

11.      "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

12.      "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

13.      "*Claims Register*" means the official register of Claims against and Interests in the Debtors maintained by the Solicitation Agent.

14.      "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

15.      "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

16.      "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

17.      "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

18.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement.

19.     "*Consenting Noteholders*" means the Noteholders that are party to the RSA.

20.     "*Consummation*" means the occurrence of the Effective Date.

21.     "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

22.     "*Debtor Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

23.     "*Debtors*" means, collectively, (i) LTR, (ii) Holdings, (iii) Shelters, and (iv) Investco.

24.     "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

25.     "*Disputed*" means, with respect to any Claim or Interest, a Claim or Interest that is not yet Allowed, including (a) any Proof of Claim that, on its face, is contingent or unliquidated; (b) any Proof of Claim or request for payment of an Administrative Claim filed after the Effective Date or the deadline for filing Proofs of Claim based on the Debtors' rejection of Executory Contracts or Unexpired Leases, as applicable, and (c) any Claim that is subject to an objection or a motion to estimate, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court.

26.     "*Distribution Agent*" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select to make or to facilitate distributions in accordance with the Plan.

27.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, upon which the Distribution Agent shall make distributions to holders of Allowed Claims and/or Interests entitled to receive distributions under the Plan.

28.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

29.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

30.     "*Equity Security*" has the meaning set forth in section 101(16) of the Bankruptcy Code and includes, for the avoidance of doubt, the Investco Interests.

31.     "*Equity Warrants*" means the warrants issued to holders of Investco Convertible Preferred Interests, as more fully described in Article IV.C of the Plan.

32.    "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

33.    "*Exchange Act*" means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

34.    "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) any official committees appointed in the Chapter 11 Cases (if any) and each of their respective members; (c) the Consenting Noteholders; (d) the Exit Facility Lenders; (e) the Exit Facility Agent; (f) the LTR Indenture Trustee; and (g) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

35.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

36.    "*Existing Equityholders*" means the holders of Investco Interests.

37.    "*Exit Facility*" means either a new asset-based lending facility or a revolving facility potentially to be entered into by the Reorganized Debtors on the terms set forth in a document contained in the Plan Supplement.

38.    "*Exit Facility Agent*" means the administrative agent and collateral agent under the Exit Facility, if applicable, or any successor thereto, solely in its capacity as such.

39.    "*Exit Facility Documents*" means the Exit Facility credit agreement, if applicable, and any guarantee, security agreement, deed of trust, mortgage, and relevant documentation potentially entered into with respect to the Exit Facility.

40.    "*Exit Facility Lenders*" means each of the lenders and their Affiliates under the Exit Facility, if applicable, solely in their capacity as such.

41.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

42.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek *certiorari* has expired and no appeal or petition for *certiorari* has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which *certiorari* could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

43.    "*General Unsecured Claim*" means any Claim other than an Administrative Claim, a Professional Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, a Noteholder Claim, a Revolving Facility Claim, a Debtor Intercompany Claim, or a Section 510(b) Claim.

44.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

45.    "*Holdings*" means LTR Holdco, Inc., a Texas corporation and a guarantor under the LTR Indenture and LTR Credit Agreement.

46.    "*Impaired*" is used to describe a Claim or an Interest that is not Unimpaired.

47.    "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

48.    "*Intercompany Contract*" means a contract between or among two or more Debtors or a contract between or among one or more Debtors and one or more of its Affiliates.

49.    "*Intercompany Interest*" means an Interest held by a Debtor or an Affiliate of a Debtor.

50.    "*Interest*" means any Equity Security in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

51.    "*Investco*" means LTR Investco, Inc., a Texas corporation and the Debtors' ultimate parent.

52.    "*Investco Common Interests*" means the issued and outstanding common stock of Investco, and any options, warrants, rights and other instruments evidencing such interests (whether fixed or contingent, matured or unmatured, disputed or undisputed), contractual, legal, equitable, or otherwise, to acquire any of the foregoing.

53.    "*Investco Convertible Preferred Interests*" means the issued and outstanding Series A Convertible Preferred Stock of Investco, and any options, warrants, rights and other instruments evidencing such interest (whether fixed or contingent, matured or unmatured, disputed or undisputed), contractual, legal, equitable, or otherwise, to acquire any of the foregoing.

54.    "*Investco Interests*" means the Investco Common Interests, the Investco Convertible Preferred Interests, and the Investco Preferred Interests.

55.     "*Investco Preferred Interests*" means the issued and outstanding Series A Senior Preferred Stock of Investco, and any options, warrants, rights and other instruments evidencing such interests (whether fixed or contingent, matured or unmatured, disputed or undisputed), contractual, legal, equitable, or otherwise, to acquire any of the foregoing.

56.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

57.     "*LTR*" means Light Tower Rentals, Inc., a Texas corporation.

58.     "*LTR Credit Agreement*" means that certain credit agreement dated as of July 21, 2014, by and among, *inter alia*, LTR, Holdings, Shelters, and each lender from time to time party thereto.

59.     "*LTR Indenture*" means that certain indenture dated as of July 21, 2014, by and among LTR, the guarantors party thereto, and The Bank of New York Mellon Trust Company, N.A., as Trustee and Collateral Agent.

60.     "*LTR Indenture Trustee*" means The Bank of New York Mellon Trust Company, N.A. and any successor thereto.

61.     "*Management Incentive Plan*" means that certain management incentive plan, the terms of which shall be determined by the New LTR Holdings Board after the Effective Date, as more fully described in Article IV.D of the Plan.

62.     "*New LTR Holdings*" means the newly formed Delaware limited liability company, treated as a corporation for tax purposes, that will be, as of the Effective Date, the ultimate parent company of the Reorganized Debtors.

63.     "*New LTR Holdings Board*" means New LTR Holdings' initial board of directors.

64.     "*New LTR Holdings Interests*" means the limited liability company interests in New LTR Holdings.  For the avoidance of doubt, New LTR Holdings Interests does not include the Equity Warrants, Management Warrants, or Management Options prior to their respective exercise dates.

65.     "*New LTR Holdings Interests Documents*" means the New LTR Holdings LLC Agreement, the New LTR Holdings Securityholders Agreement, and the New LTR Holdings Registration Rights Agreement.  The New LTR Holdings Interests Documents will, among other things, set forth the relative rights and obligations of the holders of New LTR Holdings Interests (including as to voting, transferability, and other matters) with respect to New LTR Holdings Interests and equity-linked interests and related governance matters.  The New LTR Holdings Interests Documents will contain customary unitholder protections with respect to tag-along rights, preemptive rights, drag-along obligations, and protection against self-dealing.  The New LTR Holdings Interests Documents will also contain customary structural anti-dilution protections for stock splits or other subdivisions, stock dividends, and stock combinations.

66.      *"New LTR Holdings LLC Agreement"* means the limited liability company agreement of New LTR Holdings, the form of which shall be included in the Plan Supplement.

67.      *"New LTR Holdings Organizational Documents"* means the New LTR Holdings Interests Documents and the certificate of formation and/or other organizational documents of New LTR Holdings.

68.      "*New LTR Holdings Registration Rights Agreement*" means that certain registration rights agreement of New LTR Holdings, the form of which shall be included in the Plan Supplement.

69.      *"New LTR Holdings Securityholders Agreement"* means that certain securityholders agreement, dated as of the Effective Date, by and among the holders of New LTR Holdings Interests, the form of which shall be included in the Plan Supplement, and that will supersede and cancel any analogous prepetition shareholders' agreement or investor rights agreement.

70.      *"New Notes"* means the new secured notes or loans issued to holders of Allowed Noteholder Claims, as more fully described in <u>Article IV.B.2</u> of the Plan.

71.      *"New Notes Indenture"* means that certain indenture, loan, or similar document, dated as of the Effective Date, by and among Reorganized LTR, as issuer (or borrower), each of its subsidiaries as subsidiary guarantors, and Reorganized Holdings, as parent guarantor, and the trustee (if any) and collateral agent (if any) thereunder, which is expected to contain substantially the same collateral package and terms as the LTR Indenture.

72.      *"New Notes Debt Documents"* means, collectively, the New Notes Indenture, and all other agreements, documents, and instruments delivered or entered into in connection therewith (including any collateral agreement, guarantee agreement, and intercreditor agreement (if any)).

73.      *"New Organizational Documents"* means the New LTR Holdings Organizational Documents and, as applicable, the certificates of incorporation, certificates of formation, bylaws, shareholders' agreement, limited liability company agreement, or functional equivalent thereof with respect to each Reorganized Debtor, in each case the forms of which shall be contained in the Plan Supplement and subject to the RSA.

74.      "*Noteholder*" means each Holder, as defined in the LTR Indenture.

75.      "*Noteholder Claim*" means any Claim arising under, derived from, or based upon the LTR Indenture.

76.      "*Noteholder Equity Recovery*" means 100% of the New LTR Holdings Interests issued on the Effective Date, subject to Pro Rata dilution on account of the Management Incentive Plan, the Equity Warrants, and the distribution to holders of Investco Preferred Interests.

77.     "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

78.     "*Other Secured Claim*" means any Secured Claim other than (a) a Revolving Facility Claim or (b) a Noteholder Claim.

79.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

80.     "*Petition Date*" means the date on which the Chapter 11 Cases were commenced.

81.     "*Plan*" means this chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

82.     "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be filed by the Debtors no later than 7 days before the voting deadline to accept or reject the Plan or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, each of which shall be consistent in all respects with, and shall otherwise contain, the terms and conditions set forth on the exhibits attached hereto, where applicable.

83.     "*Plan Transaction Documents*" means all definitive documents and agreements to which the Debtors will be a party as contemplated by the RSA and the Plan, including (a) the Plan and any documentation or agreements related thereto; (b) the Confirmation Order and pleadings in support of entry thereof; (c) the New Organizational Documents; (d) the New Notes Debt Documents; (e) the Exit Facility Documents (if applicable); and (f) each other document that will comprise the Plan Supplement.  The form and substance of each document comprising the Plan Transaction Documents shall be acceptable to the Debtors and the Required Consenting Noteholders.

84.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

85.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

86.     "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

87.     "*Professional Fee Amount*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.C of the Plan.

88.      "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

89.      "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

90.      "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

91.      "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

92.      "*Released Party*" means collectively, and in each case in its capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the Consenting Noteholders; (c) the Existing Equityholders; (d) the Revolving Lenders; (e) the Exit Facility Lenders; (f) the Exit Facility Agent; (g) the LTR Indenture Trustee; (h) the Noteholders; and (i) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing entities in clauses (b) through (h), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their (including, for the avoidance of doubt, the Entities identified in clauses (a) through (h)) respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

93.      "*Releasing Parties*" means, collectively, (a) the Debtors and the Reorganized Debtors; (b) the Consenting Noteholders; (c) the Existing Equityholders; (d) the Revolving Lenders; (e) the Exit Facility Lenders; (f) the Exit Facility Agent; (g) the LTR Indenture Trustee; (h) the Noteholders; (i) all holders of Claims or Interests that are deemed to accept the Plan; and (j) with respect to the foregoing clauses (a) through (i), each such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, principals, members, employees, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

94.      "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

95.      "*Reorganized Holdings*" means Holdings, or any successor or assign, by merger, consolidation, or otherwise, on or after the Effective Date.

96.     "*Reorganized LTR*" means LTR, or any successor or assign, by merger, consolidation, or otherwise, on or after the Effective Date.

97.     "*Required Consenting Noteholders*" means the Consenting Noteholders who hold, in the aggregate, at least 55% of the outstanding principal amount of the total outstanding notes under the LTR Indenture held by all Consenting Noteholders as of such date the Required Consenting Noteholders make a determination in accordance with the RSA or the Plan.

98.     "*Restructuring Transactions*" means the Debtors' restructuring, inclusive of the transactions described in Article IV.R of the Plan.

99.     "*Revolving Facility*" means the Revolving Credit Facility, as defined in the LTR Credit Agreement.

100.     "*Revolving Facility Claim*" means any Claim arising under, derived from, or based upon the Revolving Facility, together with all existing letters of credit thereunder.

101.     "*Revolving Facility Documents*" means the LTR Credit Agreement, together with all related agreements and documents executed by any of the Debtors in connection with the LTR Credit Agreement.

102.     "*Revolving Lenders*" means each Lender, as defined in the LTR Credit Agreement.

103.     "*RSA*" means that certain Restructuring Support Agreement, dated as of August 8, 2016, by and among the Debtors, the Consenting Noteholders, and the Existing Equityholders, including all exhibits and attachments thereto.

104.     "*Schedule of Rejected Contracts and Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, filed as part of the Plan Supplement, as may be amended by the Debtors from time to time prior to the Confirmation Date.

105.     "*Section 510(b) Claim*" means any Claim arising from:  (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

106.     "*Secured Claim*" means a Claim:  (a) secured by a valid Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

107.     "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law.

108.     "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

109.     "*Servicer*" means an agent or other authorized representative of holders of Claims or Interests and, with respect to the Noteholders, the LTR Indenture Trustee.

110.     "*Shelters*" means LTR Shelters, Inc., a Texas corporation and a guarantor under the LTR Indenture and LTR Credit Agreement

111.     "*Solicitation Agent*" means Prime Clerk LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

112.     "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

113.     "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

114.     "*Unimpaired*" is used to describe a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

## B.     Rules of Interpretation

For purposes of the Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include

"members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (l) the Reorganized Debtors shall include New LTR Holdings as and where appropriate; (m) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" and (n) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

## C.     Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

## E.     Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## F.     Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

## G.     Controlling Document

In the event of an inconsistency between the Plan, the RSA, and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

# ARTICLE II

## ADMINISTRATIVE, PROFESSIONAL AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

**A.      Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors (in consultation with the Required Consenting Noteholders) or the Reorganized Debtors, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Reorganized Debtors, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**B.      [Reserved]**

**C.      Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than 45 days after the Effective Date.   The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.  Professionals shall deliver to the Debtors their estimates for purposes of the Reorganized Debtors computing the Professional Fee Amount no later than five Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  No funds in the

Professional Fee Escrow Account shall be property of the Estates.  Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Claims have been paid will be turned over to the Reorganized Debtors.

From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      **Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III

### CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

A.      **Classification of Claims and Interests**

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 3 | Revolving Facility Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Noteholder Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 6 | Debtor Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 7 | Interests in Debtors other than Investco | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 8 | Investco Convertible Preferred Interests | Impaired | Entitled to Vote |
| 9 | Investco Preferred Interests | Impaired | Entitled to Vote |
| 10 | Investco Common Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.**   **Treatment of Classes of Claims and Interests**

Each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by:  (a) the Debtors; (b) the holder of such Allowed Claim or Allowed Interest, as applicable; and (c) the Required Consenting Noteholders.   Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.   **Class 1 — Other Secured Claims**

(a)   *Classification*:  Class 1 consists of any Other Secured Claims against any Debtor.

(b)   *Treatment*:  Each holder of an Allowed Class 1 Claim shall receive as determined by the Debtors or the Reorganized Debtors, as applicable, with the consent (such consent not to be unreasonably withheld) of the Required Consenting Noteholders:

(i) payment in full in Cash of its Allowed Class 1 Claim;

(ii) the collateral securing its Allowed Class 1 Claim;

(iii) Reinstatement of its Allowed Class 1 Claim; or

(iv) such other treatment rendering its Allowed Class 1 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*:   Class 1 is Unimpaired under the Plan.  Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

2. **Class 2 — Other Priority Claims**

(a) *Classification*:  Class 2 consists of any Other Priority Claims against any Debtor.

(b) *Treatment*:  Each holder of an Allowed Class 2 Claim shall receive Cash in an amount equal to such Allowed Class 2 Claim.

(c) *Voting*:   Class 2 is Unimpaired under the Plan.  Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

3. **Class 3 — Revolving Facility Claims**

(a) *Classification*:  Class 3 consists of any Revolving Facility Claims.

(b) *Allowance*: On the Effective Date, Class 3 Revolving Facility Claims shall be Allowed in the aggregate principal amount of $0, plus any liquidated amounts for reasonable and documented costs and expenses, as of the Petition Date, that are reimbursable under the Revolving Facility Documents.

(c) *Treatment*:  Each holder of an Allowed Class 3 Claim shall receive Cash in an amount equal to such Allowed Class 3 Claim.

(d) *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Allowed Class 3 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

4. **Class 4 — Noteholder Claims**

(a) *Classification*:  Class 4 consists of all Noteholder Claims.

(b) *Allowance*:  On the Effective Date, Class 4 Claims shall be Allowed in the aggregate principal amount of $330,000,000, plus any accrued but unpaid interest thereon as of the Petition Date, in each case in accordance with the terms and conditions under the LTR Indenture.

(c) *Treatment*:  Each holder of an Allowed Class 4 Claim shall receive (i) its Pro Rata share of the Noteholder Equity Recovery and (ii) its Pro Rata share of the New Notes.

(d) *Voting*:  Class 4 is Impaired under the Plan.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

5. **Class 5 — General Unsecured Claims**

(a) *Classification*:  Class 5 consists of any General Unsecured Claims against any Debtor.

(b) *Treatment*:  Each holder of an Allowed Class 5 Claim shall receive Cash in an amount equal to such Allowed Class 5 Claim on the later of:  (a) the Effective Date; or (b) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 5 Claim.

(c) *Voting*:  Class 5 is Unimpaired under the Plan.  Holders of Allowed Class 5 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 5 Claims are not entitled to vote to accept or reject the Plan.

6. **Class 6 — Debtor Intercompany Claims**

(a) *Classification*:  Class 6 consists of any Debtor Intercompany Claims.

(b) *Treatment*:  Each Allowed Class 6 Claim shall be, at the option of the Debtors, with the consent (such consent not to be unreasonably withheld) of the Required Consenting Noteholders, either:

(i) Reinstated; or

(ii) canceled and released without any distribution on account of such Claims.

(c) *Voting*:  Holders of Allowed Class 6 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, depending on the treatment selected above.  Holders of Allowed Class 6 Claims are not entitled to vote to accept or reject the Plan.

7. **Class 7 — Interests in Debtors other than Investco**

    (a)    *Classification*:  Class 7 consists of Interests in Debtors other than Investco.

    (b)    *Treatment*:  Class 7 Interests shall be, at the option of the Debtors, with the consent (such consent not to be unreasonably withheld) of the Required Consenting Noteholders, either:

        (i)    Reinstated; or

        (ii)    canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Class 7 Interests will not receive any distribution on account of such Class 7 Interests.

    (c)    *Voting*:  Holders of Class 7 Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, depending on the treatment selected above.  Holders of Class 7 Interests are not entitled to vote to accept or reject the Plan.

8. **Class 8 — Investco Convertible Preferred Interests**

    (a)    *Classification*:  Class 8 consists of the Investco Convertible Preferred Interests.

    (b)    *Treatment*:  Class 8 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each holder of an Allowed Class 8 Interest shall receive its Pro Rata share of Equity Warrants, as more fully described in Article IV.C of this Plan.

    (c)    *Voting*:  Class 8 is Impaired under the Plan.  Holders of Allowed Class 8 Interests are entitled to vote to accept or reject the Plan.

9. **Class 9 — Investco Preferred Interests**

    (a)    *Classification*:  Class 9 consists of the Investco Preferred Interests.

    (b)    *Treatment*:  Class 9 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.  Each holder of an Allowed Class 9 Interest shall receive its Pro Rata share of Management Warrants, issued on the same terms as the Management Incentive Plan, representing New LTR Holdings Interests constituting 1.0% of the total equity of New LTR Holdings (calculated as of the Effective Date and subject to dilution on account of future equity issuances).  Except as expressly set forth in Article IV.D of the Plan, the other terms (including vesting) of the Management Warrants will be

negotiated in good faith, acceptable to the Required Consenting Noteholders, and documented in the Plan Supplement.

(c)     *Voting*:  Class 9 is Impaired under the Plan.  Holders of Allowed Class 9 are entitled to vote to accept or reject the Plan.

10.     **Class 10 – Investco Common Interests**

(a)     *Classification*: Class 10 consists of the Investco Common Interests.

(b)     *Treatment*: Class 10 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Class 10 Interests will not receive any distribution on account of such Class 10 Interests.

(c)     *Voting*: Class 10 is Impaired under the Plan.  Holders of Class 10 Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Class 10 Interests are not entitled to vote to accept or reject the Plan.

11.     **Class 11 – Section 510(b) Claims**

(a)     *Classification*: Class 11 consists of any Section 510(b) Claims against any Debtor.

(b)     *Allowance*: Notwithstanding anything to the contrary herein, a Class 11 Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.  The Debtors are not aware of any valid Class 11 Claim and believe that no such Class 11 Claim exists.

(c)     *Treatment*: Class 11 Claims, if any, will be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(d)     *Voting*: Class 11 is Impaired under the Plan.  Holders (if any) of Allowed Class 11 Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders (if any) of Allowed Class 11 Claims are not entitled to vote to accept or reject the Plan.

C.     **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.    **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the holders of such Claims or Interests in such Class; *provided*, *however*, that such Class will not be used as an impaired accepting class pursuant to Bankruptcy Code section 1129(a)(10).

F.    **Intercompany Interests**

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the holders of New LTR Holdings Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.  For the avoidance of doubt, any Interest in non-Debtor subsidiaries owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor that owns such subsidiary.

G.    **Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

H.    **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors, with the consent of the Required Consenting Noteholders, reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

# ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

### A.    General Settlement of Claims and Interests

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness.  Subject to Article VI of the Plan, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

### B.    Sources of Consideration for Plan Distributions

####    1.    Cash on Hand

The Reorganized Debtors shall use Cash on hand to fund distributions to certain holders of Claims entitled to receive Cash.

####    2.    New Notes

On the Effective Date, Reorganized LTR shall issue new secured notes, guaranteed by each of its subsidiaries (except for any immaterial subsidiaries, consistent with the LTR Indenture) and its parent company (which shall be a subsidiary of New LTR Holdings), in the aggregate principal amount of $30 million, (i) bearing interest at 10% per annum, payable in cash or in kind at the option of the Reorganized LTR for the period commencing on the Effective Date and ending on the third anniversary thereof, and payable solely in cash thereafter, (ii) maturing on the fifth anniversary of the Effective Date, (iii) being callable (a) prior to the second anniversary of the Effective Date at a price equal to 101% of the aggregate principal amount outstanding, (b) during the period commencing on the second anniversary of the Effective Date through the day prior to the third anniversary of the Effective Date at a price equal to 106.75% of the aggregate principal amount outstanding, (c) during the period commencing on the third anniversary of the Effective Date through the day prior to the fourth anniversary of the Effective Date at a price equal to 104.50% of the aggregate principal amount outstanding, and (d) at a price equal to 100% of the aggregate outstanding amount from the fourth anniversary of the Effective Date and thereafter, and (iv) containing terms and covenants substantially similar to those under the LTR Indenture, with such modifications acceptable to the Required Consenting Noteholders.  A form of the New Notes Indenture shall be filed with the Plan Supplement.  For the avoidance of doubt, the Noteholders will not be required to purchase the New Notes from the Reorganized Debtors with new money and shall receive New Notes on account of their prepetition Claims and as part of their distribution pursuant to Article III of the Plan.

On the Effective Date, the applicable Reorganized Debtors may enter into the New Notes Debt Documents. Confirmation of the Plan shall be deemed approval of the New Notes and the New Notes Debt Documents, if applicable, and all transactions contemplated thereby, including, without limitation, any actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the New Notes Debt Documents and such other documents as may be required to effectuate the treatment afforded thereunder, if applicable. On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Notes Debt Documents, if applicable, (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Notes Debt Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Notes Debt Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The collateral agent (if any) of the New Notes and the agent for the lenders under the Exit Facility (if any) may enter into a customary intercreditor agreement setting forth the respective rights of Creditors to the collateral, including that the obligations under the New Notes may be secured by (a) a first priority lien on all of the existing and future property and assets of LTR and the guarantors constituting Notes Priority Collateral (which is expected to be defined substantially similarly to the LTR Indenture) and (b) a second priority lien on all of the existing and future property and assets of LTR and the guarantors constituting Credit Facility Priority Collateral (which is expected to be defined substantially similarly to the LTR Indenture), in each case subject to certain exceptions and permitted liens, and the terms of the intercreditor agreement (if any).

3.      **Issuance and Distribution of the New LTR Holdings Interests**

All existing Interests in Investco shall be cancelled as of the Effective Date, and Reorganized Investco shall issue 100% of its Interests to New LTR Holdings. New LTR Holdings shall issue the New LTR Holdings Interests pursuant to the Plan. The issuance of the New LTR Holdings Interests (including Interests reserved under the Management Incentive Plan and the Equity Warrants), shall be authorized without the need for any further corporate or limited liability company action and without any further action by the holders of Claims or Interests or the Debtors or the Reorganized Debtors, as applicable. The New LTR Holdings Organizational Documents shall authorize the issuance and distribution on the Effective Date of the New LTR Holdings Interests to the Distribution Agent for the benefit of Entities entitled to receive the New LTR Holdings Interests on the Effective Date pursuant to the Plan. All of the

New LTR Holdings Interests issued under the Plan shall be duly authorized and validly issued, and the holders of Allowed Noteholder Claims that will receive New LTR Holdings Interests shall not be required to execute any of the New LTR Holdings Interests Documents before receiving their respective distributions of New LTR Holdings Interests under the Plan.  Any such Noteholder who does not execute one or all of the New LTR Holdings Interests Documents shall be automatically deemed to have executed and accepted the terms of each such unexecuted New LTR Holdings Interests Document (in such Person's capacity as a unitholder of New LTR Holdings) and to be party thereto without further action.  Each of the New LTR Holdings Interests Documents shall be adopted on the Effective Date and shall be deemed to be valid, binding and enforceable in accordance with its terms, and each holder of New LTR Holdings Interests shall be bound thereby.  Each distribution and issuance of the New LTR Holdings Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

On the Effective Date, none of the New LTR Holdings Interests will be registered under the Securities Act or listed on a national securities exchange, the Reorganized Debtors will not be reporting companies under the Exchange Act, the Reorganized Debtors shall not be required to and will not file reports with the Securities and Exchange Commission or any other entity or party, and the Reorganized Debtors shall not be required to file monthly operating reports with the Bankruptcy Court after the Effective Date.  In order to prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Exchange Act, except in connection with a public offering, the New Organizational Documents may impose certain trading restrictions, and the New LTR Holdings Interests may be subject to certain transfer and/or other restrictions pursuant to the New Organizational Documents designed to maintain the Reorganized Debtors as private, non-reporting companies.

## C.      The Equity Warrants

The terms of the Equity Warrants shall be substantially similar in all respects with those provided in the RSA.  For the avoidance of doubt, the Equity Warrants shall consist of (i) penny warrants exercisable into New LTR Holdings Interests constituting 5% of the total equity of New LTR Holdings (calculated as of the Effective Date and subject to dilution on account of the Management Incentive Plan and future equity issuances), (ii) warrants exercisable into New LTR Holdings Interests constituting 10% of the total equity of New LTR Holdings (calculated as of the Effective Date and subject to dilution on account of the Management Incentive Plan and future equity issuances), at an initial strike price implying a total equity value of the Reorganized Debtors of $300 million, and (iii) warrants exercisable into New LTR Holdings Interests constituting 5% of the total equity of New LTR Holdings (calculated as of the Effective Date and subject to dilution on account of the Management Incentive Plan and future equity issuances), at an initial strike price implying a total equity value of the Reorganized Debtors of $457 million. The strike price on each of the Equity Warrants shall be increased or decreased to reflect appropriate adjustments on account of any capital contributions made to (whether in Cash, cash equivalents, promissory obligations, or the fair market value of other property which is contributed or deemed to have been contributed) or distributions or dividends, other than redemptions, from (whether in Cash, cash equivalents, promissory obligations, or the fair market

value of other property which is distributed or deemed to have been distributed, but excluding payment of any yield on any preferred equity securities) New LTR Holdings from and after the Effective Date.  Each class of the Equity Warrants shall have a nine (9) year tenor and be exercisable without cash payment at the implied values set forth above, provided that the holder of such Equity Warrants shall be entitled only to participation in the portion of the proceeds in excess of the applicable strike price.  For the avoidance of doubt, holders entitled to receive the Equity Warrants hereunder shall, in their capacity as such, neither execute, nor be deemed to have executed and accepted the terms of, the New LTR Holdings Interests Documents as of the Effective Date.  For the further avoidance of doubt, such holders shall, upon exercise of the Equity Warrants, execute or be deemed to have executed and accepted, and be bound by, the New LTR Holdings Interests Documents.

## D.    Management Incentive Plan

After the Effective Date, the Reorganized Debtors, including New LTR Holdings, shall implement the Management Incentive Plan on terms approved by the directors of New LTR Holdings Board, but which shall provide for:  (i) penny warrants or options (the "Management Warrants") exercisable into, or, alternatively, restricted units representing, New LTR Holdings Interests constituting 1.5% of the total equity of New LTR Holdings (calculated as of the Effective Date and subject to dilution on account of future equity issuances), separate from and in addition to the Management Warrants constituting 1.0% of the total equity of New LTR Holdings in respect of the Class 9 Interests; and (ii) options (the "Management Options" and, together with the Management Warrants, the "Management Securities") (A) to purchase New LTR Holdings Interests constituting 2.5% of New LTR Holdings (calculated as of the Effective Date and subject to dilution on account of future equity issuances), at an initial strike price implying a total equity value of the Reorganized Debtors of $157 million; and (B) to purchase New LTR Holdings Interests constituting 10% of the total equity of New LTR Holdings (calculated as of the Effective Date and subject to dilution on account of future equity issuances), (xx) one third (1/3) of which are exercisable at an initial strike price implying a total equity value of the Reorganized Debtors of $232 million, (yy) one third (1/3) of which are exercisable at an initial strike price implying a total equity value of the Reorganized Debtors of $300 million, and (zz) one third (1/3) of which are exercisable at an initial strike price implying a total equity value of the Reorganized Debtors of $457 million.  The strike price on each of the Management Securities shall be increased or decreased to reflect appropriate adjustment on account of any capital contributions made to (whether in Cash, cash equivalents, promissory obligations, or the fair market value of other property which is contributed or deemed to have been contributed) or distributions or dividends, other than redemptions, from (whether in Cash, cash equivalents, promissory obligations, or the fair market value of other property which is contributed or deemed to have been contributed, but excluding payment of any yield on any preferred equity securities) New LTR Holdings from and after the Effective Date.  The Management Securities shall have a nine (9) year tenor and be exercisable without cash payment at the implied values set forth above, provided that the holder of Management Securities shall be entitled only to participation in the portion of the proceeds in excess of the applicable strike price.  The Management Options shall vest over a five (5) year period from grant with 20% of such Management Options vesting each year, subject in each case to continued employment with the Reorganized Debtors through each such vesting date, and subject to customary repurchase and forfeiture provisions.  The other terms (including vesting) of the Management Warrants will be negotiated in good faith,

acceptable to the Required Consenting Noteholders, and documented in the Plan Supplement. For the avoidance of doubt, (1) allocation of the Management Warrants and Management Options shall be made at the discretion of the New LTR Holdings Board, and (2) eligible parties under the Management Incentive Plan shall, in their capacity as such, neither execute, nor be deemed to have executed and accepted the terms of, the New LTR Holdings Interests Documents as of the Effective Date. For the further avoidance of doubt, such eligible parties shall, upon exercise of the Management Securities, execute or be deemed to have executed and accepted, and be bound by, the New LTR Holdings Interests Documents.

**E.**    **Exit Facility**

On the Effective Date, the Reorganized Debtors may enter into the Exit Facility, the terms of which will be set forth in the Exit Facility Documents. Confirmation of the Plan shall be deemed approval of the Exit Facility and the Exit Facility Documents, if applicable, and all transactions contemplated thereby, including, without limitation, any supplemental or additional syndication of the Exit Facility, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility, if applicable. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents, if applicable, (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The collateral agent (if any) of the New Notes and the agent for the lenders under the Exit Facility (if any) may enter into a customary intercreditor agreement setting forth the respective rights of Creditors to the collateral, including that the obligations under the Exit Facility (if any) may be secured by (a) a first priority lien on all of the existing and future property and assets of LTR and the guarantors constituting Credit Facility Priority Collateral and (b) a second priority lien on all of the existing and future property and assets of LTR and the guarantors constituting Notes Priority Collateral, in each case subject to certain exceptions and permitted liens, and the terms of the intercreditor agreement (if any).

**F.**    **Professional Fees and Expenses**

On the Effective Date, the Debtors or the Reorganized Debtors shall pay in Cash all accrued and unpaid reasonable and documented fees and expenses of the Consenting Noteholders' professionals (which shall be limited to Kirkland & Ellis LLP, a financial advisor, a due diligence consultant, and any other professionals agreed to by the Debtors or the Reorganized Debtors, as applicable (with such agreement not to be unreasonably withheld)) and the LTR Indenture Trustee.

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors shall pay in Cash all accrued and unpaid fees and expenses owed to Credit Suisse Securities (USA) LLC under its letter, dated April 12, 2016, with LTR, including, without limitation, the "Transaction Fee" referred to therein, and such payment shall be deemed reasonable.

## G.    Exemption from Registration Requirements

The offering, issuance, and distribution of any Securities, including the New Notes, New LTR Holdings Interests, any of the Equity Warrants, and the equity and equity-linked interests associated with the Management Incentive Plan, pursuant to the Plan will be exempt from the registration requirements of section 5 of the Securities Act pursuant to section 1145 of the Bankruptcy Code or any other available exemption from registration under the Securities Act, as applicable, as further described below.  Pursuant to section 1145 of the Bankruptcy Code, the New LTR Holdings Interests and Equity Warrants issued under the Plan will be freely transferable under the Securities Act by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any other applicable regulatory approval.

At the request of the Required Consenting Noteholders, the New Notes will be issued without registration in reliance upon the exemption set forth in section 4(a)(2) of the Securities Act rather than section 1145 of the Bankruptcy Code and the New Notes Indenture will not be qualified under the Trust Indenture Act of 1939.  The New Notes will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to a registration statement or an applicable exemption from registration under the Securities Act, such as the exemptions provided by Rule 144, Rule 144A and Reg S under the Securities Act, and under other applicable law.

Equity and equity-linked interests associated with the Management Incentive Plan will be issued pursuant to Rule 701 promulgated under the Securities Act or pursuant to the exemption provided by section 4(a)(2) of the Securities Act.

## H.    Corporate Existence

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may

be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

**I.      Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**J.      Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except with respect to assumed Executory Contracts and Unexpired Leases and to the extent otherwise provided herein, all notes, instruments, Certificates, plans (including the 2012 Stock Option Plan of Debtor LTR Investco, Inc.), agreements and other documents (including that certain Clairvest Management Fee Agreement and any prepetition shareholders' agreement or investor rights agreement) evidencing Claims or Interests, shall be cancelled and the obligations thereunder (or in any way related thereto) of the Debtors, the Reorganized Debtors, or any other counterparty shall be discharged and canceled; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of (a) allowing holders of Allowed Claims to receive distributions under the Plan and (b) allowing the beneficiaries of any Indemnification Provisions to be indemnified.

Any Claims (the following, collectively, "Old Equity Claims") arising from the cancellation or rejection of any prepetition organizational documents, shareholders' agreement or investor rights agreement, and any related-party consulting or management services agreements, including that certain Clairvest Management Fee Agreement, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Old Equity Claims have agreed to waive, not pursue, and not receive any distribution on account of such Claims.

The LTR Indenture shall continue in effect to: (i) allow the LTR Indenture Trustee to make all distributions to Noteholders; (ii) permit the LTR Indenture Trustee to assert its charging lien in accordance with the terms of the LTR Indenture; (iii) permit the LTR Indenture Trustee to

appear before the Bankruptcy Court or any other court of competent jurisdiction after the Effective Date; and (iv) permit the LTR Indenture Trustee to perform any functions that are necessary to effectuate the foregoing.

## K.    New Organizational Documents

On the Effective Date, the Debtors shall enter into new formation, organizational, and constituent documents (including those formation, organizational, and constituent documents relating to limited partnerships and limited liability companies) as may be necessary to effectuate the transactions contemplated by the Plan and shall be in form and substance acceptable to the Debtors and the Required Consenting Noteholders.  The Debtors' respective formation, organizational, and constituent documents (including those formation, organizational, and constituent documents relating to limited partnerships and limited liability companies) shall be amended, cancelled, or otherwise modified as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code.  The New Organizational Documents shall be included as exhibits to the Plan Supplement and shall, among other things:  (a) be in form and substance acceptable to the Debtors and Required Consenting Noteholders; and (b) authorize the issuance of the New LTR Holdings Interests.  After the Effective Date, each of New LTR Holdings and each of the Reorganized Debtors may amend and restate its formation, organizational, and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

## L.    Effectuating Documents; Further Transactions

On and after the Effective Date, New LTR Holdings and the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Exit Facility Documents, if applicable, the New Notes Debt Documents, the New Organizational Documents, the Equity Warrants, any equity or equity-linked interests issued pursuant to the Management Incentive Plan and/or to the holders of New LTR Holdings Interests, and any other Securities issued pursuant to the Plan in the name of and on behalf of New LTR Holdings and/or the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

## M.    Section 1146(a) Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security for any or all of the Exit Facility, if applicable, and the New Notes; or (f) the making, delivery, or recording of any deed or other instrument of

transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## N.      Directors and Officers

The Debtors' senior officers as of the Petition Date shall continue to occupy such roles until and upon the Effective Date. The members of the New LTR Holdings Board and the officers, directors, and/or managers of each of New LTR Holdings and the Reorganized Debtors will be identified in the Plan Supplement or before the Confirmation Hearing. On the Effective Date, the New LTR Holdings Board will consist of five members. The members of the New LTR Holdings Board shall be determined in accordance with the terms of the RSA and designated as follows: (i) Clearlake Capital Group, L.P. or its affiliates ("Clearlake") is entitled to designate two (2) directors; (ii) the Consenting Noteholders other than Clearlake is entitled to designate one (1) director; (iii) the chief executive officer of LTR shall be a director; (iv) holders of the majority of the New LTR Holdings Interests shall designate one (1) director; and (v) for so long as such holders continue to hold at least 50% of each series of Equity Warrants (and units issuable upon exercise thereof), the holders of Investco Convertible Preferred Interests in possession of the majority of the Equity Warrants (and units issuable upon exercise thereof) shall designate one (1) board observer. The members of the board of directors of any Reorganized Debtor subsidiary of New LTR Holdings shall be acceptable to the Required Consenting Noteholders. On the Effective Date, the existing officers of the Debtors shall serve in their current capacities for the Reorganized Debtors. From and after the Effective Date, each director, officer, or manager of New LTR Holdings and the Reorganized Debtors shall serve pursuant to the terms of their respective charters and bylaws or other formation and constituent documents, and applicable laws of New LTR Holdings' and/or the respective Reorganized Debtor's jurisdiction of formation. In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities of the members of the New LTR Holdings Board and any Person proposed to serve as an officer of New LTR Holdings shall be disclosed at or before the Confirmation Hearing.

The Debtors shall purchase, on or before the Effective Date, and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement.

**O.**     **[Reserved]**

**P.**     **Incentive Plans and Employee and Retiree Benefits**

Except as otherwise provided herein, on and after the Effective Date, subject to any Final Order and, without limiting any authority provided to the New LTR Holdings Board under the Debtors' respective formation and constituent documents, the Reorganized Debtors shall: (a) amend, adopt, assume, and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans (other than any equity incentive plan (if any) or other prepetition senior management incentive plan, which in each case shall be replaced by the Management Incentive Plan), health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date; and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**Q.**     **Preservation of Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the following:  (a) the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date, except for Causes of Action brought as counterclaims or defenses to claims asserted against the Reorganized Debtors and their Affiliates; and (b) all Causes of Action that arise under sections 544, 547, 548, and 549 of the Bankruptcy Code and state fraudulent conveyance law.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim

preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

**R.      Restructuring Transactions**

On or after the Confirmation Date, or as soon as reasonably practicable thereafter, the Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, consistent with and pursuant to the terms and conditions of the RSA, including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan, including such transactions as are acceptable to the Required Consenting Noteholders to cause New LTR Holdings to become the ultimate parent company of the Reorganized Debtors and to effect (i) the issuance and distribution of the New LTR Holdings Interests, Equity Warrants, and any equity or equity-linked interests associated with the Management Incentive Plan, (ii) the issuance by Reorganized LTR of the New Notes and execution and delivery of the New Notes Debt Documents, and (iii) the guaranty of the New Notes by Reorganized Holdings; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) the execution and delivery of the Exit Facility Documents, if applicable; and (e) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

Each of the matters provided for by the Plan involving the corporate structure of New LTR Holdings and/or the Debtors or corporate or related actions to be taken by or required of New LTR Holdings and/or the Reorganized Debtors, whether taken prior to or as of the Effective Date, shall be deemed authorized and approved in all respects without the need for any further action and without any further action by New LTR Holdings, the Debtors or the Reorganized Debtors, as applicable. Such actions may include, among others, the following: (a) the adoption and filing of the New Organizational Documents; (b) the selection of the directors, managers, and officers for New LTR Holdings and the Reorganized Debtors, including the appointment of

the New LTR Holdings Board; (c) the authorization, issuance, and distribution of New LTR Holdings Interests, New Notes, Equity Warrants, and any equity or equity-linked interests associated with the Management Incentive Plan; (d) the assumption of Executory Contracts or Unexpired Leases; (e) the entry into the Exit Facility, if applicable, and the execution and delivery of the Exit Facility Documents, if applicable and the New Notes Debt Documents; and (f) the adoption of the Management Incentive Plan, at the discretion of (and on terms and conditions determined by) the New LTR Holdings Board and in accordance with the RSA.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption of Executory Contracts and Unexpired Leases

Each Executory Contract and Unexpired Lease that has otherwise not been rejected shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments.

Except as otherwise provided herein or agreed to by the Debtors, the Required Consenting Noteholders, and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

### B.    Indemnification

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the Reorganized Debtors' governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Reorganized Debtors' current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the organizational documents of each of the respective Debtors on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors will amend and/or restate their respective governance documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtors' obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.

## C.    **Cure of Defaults and Objections to Cure and Assumption**

The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be filed and served on the Reorganized Debtors on or before 30 days after the Effective Date.  If such Cure dispute is not resolved within 7 days of the Reorganized Debtors' receiving such Cure dispute, the counterparty to the applicable assumed Executory Contract or Unexpired Lease shall timely file an objection with the Bankruptcy Court within 7 days.  **Any such request and/or objection that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**  Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure.  The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court on or before 30 days after the Effective Date.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed.  **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.**

If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any and all Proofs of Claim (but, for the avoidance of doubt, not including Cures) based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

**D.**     **Contracts, Intercompany Contracts, and Leases Entered Into After the Petition Date**

Contracts, Intercompany Contracts, and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

**E.**     **Insurance Policies**

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

**F.**     **Compensation and Benefits**

As of the Effective Date, unless specifically rejected by a Final Order of the Bankruptcy Court or otherwise specifically provided for herein, all employment and severance policies, workers' compensation programs, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its present and former employees, officers, and directors, including, without limitation, all health care plans, disability plans, severance benefit plans, and incentive plans, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are deemed assumed under the Plan, and the Debtors' obligations under such plans, policies, and programs, shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, survive Confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code. Any defaults existing under any of such plans, policies, and programs shall be Cured promptly after they become known by the Reorganized Debtors.

**G.**     **Rejection**

In the event that the rejection of an Executory Contract or Unexpired Lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor, or their respective Estate, properties or interests in property, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the applicable Debtor no later than thirty (30) days after the later of (i) the Confirmation Date or (ii) the Effective Date of the rejection of such Executory Contract or Unexpired Lease, as set forth on the Schedule of Rejected Contracts and Leases or order of the Bankruptcy Court. The Confirmation Order shall constitute the Bankruptcy Court's approval of the rejection of all the leases and contracts identified in the Schedule of Rejected Contracts and Leases.

**H.**     **Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting

Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

**I.      Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE VI**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.      Distributions on Account of Claims and Interests Allowed as of the Effective Date**

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the holder of the applicable Claim or Interest, on the first Distribution Date, the Distribution Agent shall make initial distributions under the Plan on account of Claims and Interests Allowed on the Effective Date or as soon as practicable thereafter, subject to the Reorganized Debtors' right to object to Claims and Interests; *provided*, *however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.  A Distribution Date shall occur no less frequently than once in every 30 day period after the Effective Date, as necessary, in the Reorganized Debtors' sole discretion.

**B.      Rights and Powers of Distribution Agent**

**1.      Powers of the Distribution Agent**

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

**2.      Expenses Incurred On or After the Effective Date**

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims made by the Distribution Agent shall be paid in Cash by the Reorganized Debtors.

**C.**     **Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties:  (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged.   Any dividends or other distributions arising from property distributed to holders of Allowed Claims or Interests, as applicable, in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims or Interests in such Class.

**D.**     **Delivery of Distributions**

**1.**     **Record Date for Distributions to Holders of Non-Publicly Traded Securities**

On the Effective Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Effective Date.   Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly traded Certificate, is transferred and the Debtors have been notified in writing of such transfer less than 10 days before the Effective Date, the Distribution Agent shall make distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.   Notwithstanding the foregoing, publicly held securities shall not be subject to the distribution record date.

**2.**     **Distribution Process**

The Distribution Agent shall make all distributions required under the Plan, except that distributions to holders of Allowed Claims or Interests governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.   Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to holders of record as of the Effective Date by the Distribution Agent or a Servicer, as appropriate:  (1) to the address of such holder as set forth in the books and records of the

applicable Debtor (or if the Debtors have been notified in writing, on or before the date that is 10 days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is 10 days before the Effective Date; or (3) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

3.        **Accrual of Dividends and Other Rights**

For purposes of determining the accrual of distributions or other rights after the Effective Date, the New LTR Holdings Interests shall be deemed distributed as of the Effective Date regardless of the date on which it is actually issued, dated, authenticated, or distributed; *provided*, *however*, neither New LTR Holdings nor the Reorganized Debtors shall pay any such distributions or distribute such other rights, if any, until after distributions of the New LTR Holdings Interests actually take place.

4.        **Compliance Matters**

In connection with the Plan, to the extent applicable, New LTR Holdings and the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, New LTR Holdings and the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. New LTR Holdings and the Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

5.        **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

6.        **Fractional, Undeliverable, and Unclaimed Distributions**

(a)        *Fractional Distributions*.  Whenever any distribution of fractional shares or units of the New LTR Holdings Interests would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction to the nearest share (up or down), with half shares or less being

rounded down.  Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

LTR will not accept any tender from Noteholders that would result in the issuance of less than $2,000 principal amount of New Notes to the participating Noteholder.  The aggregate principal amount of New Notes issued to each participating Noteholder will be rounded down, if necessary, to $2,000 or the nearest whole multiple of $1,000 in excess thereof.  This rounded amount will be the principal amount of New Notes the Noteholder will receive, and no New Notes or Cash will be paid in lieu of any principal amount of New Notes not received as a result of rounding.

(b)     *Undeliverable Distributions*.  If any distribution to a holder of an Allowed Claim or Interest is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such holder unless and until the Distribution Agent is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder on the next Distribution Date.   Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is cancelled pursuant to Article VI.D.6.(c) of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

(c)     *Reversion*.   Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the applicable Reorganized Debtor and, to the extent such Unclaimed Distribution is New LTR Holdings Interests, shall be deemed cancelled.  Upon such revesting, the Claim or Interest of any holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

7.      **Surrender of Cancelled Instruments or Securities**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer).  Such Certificate shall be canceled solely with respect to the Debtors, and such cancelation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.

Notwithstanding the foregoing paragraph, this <u>Article VI.D.7</u> shall not apply to any Claims and Interests Reinstated pursuant to the terms of the Plan.

**E.     Claims Paid or Payable by Third Parties**

       1.     **Claims Paid by Third Parties**

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall repay, return or deliver any distribution held by or transferred to the holder to the applicable Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

       2.     **Claims Payable by Insurance Carriers**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Solicitation Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.     **Applicability of Insurance Policies**

Except as otherwise provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy.  Except as otherwise expressly provided herein, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**F.     Setoffs**

Except as otherwise expressly provided for herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such claims, rights, or Causes of

Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder.  In no event shall any holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

## G.     Allocation Between Principal and Accrued Interest

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Effective Date.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

## A.     Disputed Claims Process

Except as otherwise provided herein, if a party files a Proof of Claim and the Debtors or the Reorganized Debtors, as applicable, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VII of the Plan.  For the avoidance of doubt, there is no requirement to file a Proof of Claim (or move the Court for allowance) to be an Allowed Claim under the Plan.  **Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

## B.     Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority:  (1) to file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the

45

Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.Q of the Plan.

## C.      Adjustment to Claims Without Objection

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

## D.      No Interest

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## E.      Disallowance of Claims and Interests

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if:  (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE VIII

## EFFECT OF CONFIRMATION OF THE PLAN

## A.      Discharge of Claims and Termination of Interests

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained**

pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

**B.**     **Releases by the Debtors**

Notwithstanding anything contained in this Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the Exit Facility, if applicable, or any Restructuring Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**C.**     **Releases by Holders of Claims and Interests**

Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for good and valuable consideration, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on

behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the Plan, the Exit Facility, if applicable, or any Restructuring Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the RSA, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

D.    **Exculpation**

       Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Exit Facility, if applicable, or any Restructuring Transaction, contract, instrument, release or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.    **Injunction**

       Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are

subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

**F.  Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**G.  Recoupment**

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**H.  Document Retention**

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

**I.  Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is

contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**J.**      **Release of Liens**

Except (a) with respect to the Liens securing the Exit Facility, if applicable, the New Notes, and Other Secured Claims (depending on the treatment of such Claims), or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.

## ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.**      **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

1.      the Plan and Plan Transaction Documents shall be in a form and substance consistent in all material respects with the RSA;

2.      the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtors and the Required Consenting Noteholders, and shall:

   (a)      authorize the Debtors or the Reorganized Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

   (b)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

   (c)      authorize the Debtors, as applicable or necessary, to: (1) implement the Restructuring Transactions; (2) distribute the New Notes, the New LTR Holdings Interests, and the Equity Warrants pursuant to the exemption from registration under the Securities Act provided by section 1145 of the

Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (3) make all distributions and issuances as required under the Plan, including Cash, the New Notes, the New LTR Holdings Interests, and the Equity Warrants; and (4) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement, including the Management Incentive Plan;

(d)     authorize the implementation of the Plan in accordance with its terms; and

(e)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax (including, any mortgages or security interest filing to be recorded or filed in connection with the Exit Facility, if applicable, and the New Notes);

3.     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

4.     the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors and the Required Consenting Noteholders;

5.     the New Organizational Documents shall have been adopted and (where required by applicable law) filed with the applicable authorities of the relevant jurisdictions of organization and shall have become effective in accordance with such jurisdiction's corporation, limited liability company, or alternative comparable laws, as applicable;

6.     all Professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date have been placed in the Professional Fee Escrow Account pending approval by the Bankruptcy Court;

7.     all fees and expenses of the Consenting Noteholders, including the fees and expenses of counsel and financial advisor to the Consenting Noteholders, shall have been paid in full in Cash;

8.     the RSA shall not have terminated and shall be in full force and effect and shall not be (a) identified on the Schedule of Rejected Contracts and Leases or (b) subject of a pending motion to reject Executory Contracts, and the Debtors shall be in compliance therewith;

51

9.     the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all respects with the Plan and, without limiting any definition contained in <u>Article I.A</u> of the Plan or other provision of the Plan, according to documentation acceptable to the Debtors and the Required Consenting Noteholders; and

10.     if applicable, the Exit Facility Documents shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Facility, if applicable, shall have been waived or satisfied in accordance with the terms thereof, and the closing of the Exit Facility, if applicable, shall be deemed to occur concurrently with the occurrence of the Effective Date.

**B.**     **<u>Waiver of Conditions Precedent</u>**

The Debtors, with the prior written consent of the Required Consenting Noteholders (not to be unreasonably withheld), may waive any of the conditions to the Effective Date set forth in <u>Article IX.A</u> of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

**C.**     **<u>Effect of Non-Occurrence of Conditions to Consummation</u>**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

**ARTICLE X**

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.**     **<u>Modification of Plan</u>**

Effective as of the date hereof, (a) the Debtors, with the consent of the Required Consenting Noteholders (not to be unreasonably withheld), reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtors, with the consent of the Required Consenting Noteholders or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

B.      **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      **Withdrawal of Plan**

The Debtors, subject to and in accordance with the RSA, reserve the right to withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then:  (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including:  (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

53

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.E.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.     enter an order or Final Decree concluding or closing the Chapter 11 Cases;

15.     enforce all orders previously entered by the Bankruptcy Court; and

16.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**A.      Immediate Binding Effect**

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**B.      Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the RSA.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.      Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**D.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

**E.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.**    **Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **Light Tower Rentals, Inc.**<br>2330 E. I-20 S. Service Rd.<br>Odessa, TX 79766<br>Attn.:  Keith Muncy, Chief Financial Officer |
| **Proposed Counsel to Debtors** | **Jackson Walker LLP**<br>1401 McKinney Suite 1900<br>Houston, Texas 77010<br>Attn:   Patricia Tomasco |
| | **Proskauer Rose LLP**<br>Eleven Times Square<br>New York, New York 10019<br>Attn.:   Philip M. Abelson<br>           Ehud Barak |
| **Consenting Noteholders** | **Kirkland & Ellis LLP**<br>300 N. LaSalle<br>Chicago, Illinois 60654<br>Attn:    Anup Sathy, P.C.<br>           Ross M. Kwasteniet |
| **United States Trustee** | **Office of the United States Trustee**<br>**for the District of Southern**<br>**District of Texas – Houston Division**<br>[Address]<br>Attn.:   [Name] |

**G.**    **Term of Injunctions or Stays**

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**H.**    **Entire Agreement**

Except as otherwise indicated, and without limiting the effectiveness of the RSA, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants,

agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## I.      Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from http://cases.primeclerk.com/LTR or the Bankruptcy Court's website, available via PACER. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

## J.      Non-Severability

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Required Consenting Noteholders, consistent with the terms set forth herein; and (c) nonseverable and mutually dependent.

## K.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

## L.      Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

## M.      Waiver or Estoppel

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made

with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the RSA, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

Respectfully submitted,

LIGHT TOWER RENTALS, INC., *et al.*
on behalf of itself and all other Debtors

By: _____
Name:    Keith Muncy
Title:    Chief Financial Officer

58

Respectfully submitted,

LIGHT TOWER RENTALS, INC., *et al.*
on behalf of itself and all other Debtors

By: _____
Name:    Keith Muncy
Title:    Chief Financial Officer