## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
09/12/2016

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGHT TOWER RENTALS, INC., *et al.*,[1] | ) | Case No. 16-34284 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 16, 55** |

### SECOND INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 507 AND 552, AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO SECURED NOTES PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b), AND (V) GRANTING RELATED RELIEF

Upon the motion, dated August 30, 2016 (the "Motion") [Docket No. 16],[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of interim (this "Interim Order") and final (the "Final Order" and, together with this Interim Order, the "Orders") orders under sections 105, 361, 362, 363, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules"), seeking:

(I)     authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 507 and 552 of the Bankruptcy Code, to (i) use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code, and (ii) provide adequate protection to the Secured

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Light Tower Rentals, Inc. (4893); LTR Holdco, Inc. (8813); LTR Shelters, Inc. (5396); and LTR Investco, Inc. (3819).  The location of the Debtors' service address is 2330 E. I-20 S. Service Rd., Odessa, TX 79766.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Notes Parties for any diminution in value of their interests in the Prepetition Collateral (as defined below), in each case on the terms set forth in this Interim Order;

(II)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order and to deliver any notices of termination of the RSA (as defined below);

(III)     authorization to grant adequate protection liens to the Secured Notes Agent (as defined below) on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(IV)     the waiver of all rights to surcharge any Prepetition Collateral or Adequate Protection Collateral (as defined below) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(V)     the waiver of any right to assert an "equities of the case" claim against the Secured Notes Parties under section 552 of the Bankruptcy Code;

(VI)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order: (a) authorizing the Debtors to use the Cash Collateral; and (b) granting adequate protection to the Secured Notes Parties;

(VII)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of the Final Order authorizing the Debtors to

use the Cash Collateral (as defined below) on a final basis, and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order; and

(VIII)   a waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The Interim Hearing having been held by this Court on September 1, 2016; and upon the record made by the Debtors at the Interim Hearing (including, without limitation, the Motion and the First Day Declaration); and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion, and having found that the granting of the relief requested in the Motion on an interim basis is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having entered the *Interim Order under 11 U.S.C. §§ 105, 361, 362, 363, 507 and 552, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Secured Notes Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b), and (V) Granting Related Relief* [Docket No. 55]; and this Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND THAT:

1.      *Petition Date.*  On August 30, 2016 (the "<u>Petition Date</u>"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (this "<u>Court</u>") commencing these chapter 11 cases.

2.      *RSA and Chapter 11 Plan*.   On August 8, 2016, the Debtors, the Consenting Noteholders (as defined in the RSA), and the equity holders party thereto entered into that certain Restructuring Support Agreement (as the same may be amended, modified or supplemented from time to time in accordance with the terms thereof and including all exhibits annexed thereto, the "RSA").[3]  On the Petition Date, in accordance with the terms of the RSA, the Debtors filed the *Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 19] (as the same may be amended, modified or supplemented from time to time in accordance with the terms thereof and the RSA, the "Plan") and related disclosure statement [Docket No. 18] (the "Disclosure Statement").  The Debtors commenced solicitation of votes in respect of the Plan on August 22, 2016.

3.      *Jurisdiction and Venue*.   This Court has jurisdiction over these proceedings and the persons and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for these chapter 11 cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      *Committee Formation.*   A statutory committee of unsecured creditors or equity security holders, as applicable (if appointed, the "Committee") has not been appointed in these chapter 11 cases.  No trustee or examiner has been appointed in these chapter 11 cases.

5.      *Notice.*   Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors, whether by telecopy, email, overnight courier or hand delivery, on (a) holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis), (b) the Secured Notes Agent, (c)  the ABL Agent, (d) counsel to that certain ad hoc committee of

---

[3] A copy of the RSA is attached as Exhibit F to the Disclosure Statement.

4

the Debtors' prepetition secured noteholders that are also party to the RSA (such committee, the "Ad Hoc Committee"), Kirkland & Ellis LLP, (d) the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), (e) the United States Attorneys' Office for the Southern District of Texas, (f) the Internal Revenue Service, (g) the Environmental Protection Agency, (h) the office of the attorneys general for the states in which the Debtors operate, (i) the Securities and Exchange Commission, (j) any party known to the Debtors to assert a lien on or security interest in the Prepetition Collateral, and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and of the Interim Hearing, constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c), and (d).  Except as provided herein with respect to notice of the Final Hearing and Final Order, no further notice of, or hearing on, the relief sought in the Motion is necessary or required.

6.     *Debtors' Stipulations.*  Subject in all respects to paragraph 29 of this Interim Order, the Debtors admit, stipulate, and agree to the following (collectively, the "Debtor Stipulations"):

(a)     The ABL Facility

(i)     Light Tower Rentals, Inc., as borrower, LTR Holdco, Inc. and LTR Shelters, Inc., as guarantors, the financial institutions from time to time party thereto (collectively, the "ABL Lenders"), and Jefferies Finance LLC, as administrative agent and collateral agent (in such capacities, the "ABL Agent"), were parties to that certain Credit Agreement, dated as of July 21, 2014 (as amended, restated, modified, supplemented, or replaced from time to time, the "ABL Credit Agreement").

(ii)     The ABL Credit Agreement provided the Debtors with an asset-based credit facility (the "ABL Facility") for borrowings up to the lesser of (a) $30 million and (b) a borrowing base of 85% of eligible receivables less reserves, all as set forth in the ABL Credit Agreement.  The ABL Credit Agreement provided for interest and commitment fees on any amounts undrawn under the ABL Facility (together with any other amounts outstanding under the ABL Facility as provided in the ABL Credit Agreement, including obligations in

5

respect of the cash management system, cash collateral for letters of credit, purchase charge cards, purchase card services, fees, expenses, and indemnity, the "ABL Obligations"). The Debtors terminated the ABL Facility effective as of August 26, 2016, and the liens securing the ABL Obligations have been released in connection therewith. As of the Petition Date, there are no amounts outstanding under the ABL Facility.

(b)     Secured Notes

(i)     Pursuant to that certain Indenture, dated July 21, 2014 (as amended, modified, waived, and/or supplemented from time to time, the "Indenture"), by and among Light Tower Rentals, Inc., as issuer, LTR Holdco, Inc. and LTR Shelters, Inc. as guarantors party thereto, and The Bank of New York Mellon Trust Company, N.A. as trustee and collateral agent (the "Secured Notes Agent"), 8.125% senior secured notes due 2019 (the "Secured Notes") were issued in an original principal amount of $330 million. As used herein, the "Secured Noteholders" means the holders under the Indenture (together with the Secured Notes Agent, the "Secured Notes Parties").

(ii)     As of the Petition Date, approximately $330 million in principal and approximately $15.8 million in unpaid interest was outstanding in respect of the Secured Notes (together with any other amounts outstanding under the Secured Notes Documents (as defined below), including obligations in respect of fees, expenses and indemnity, the "Secured Notes Obligations").

(iii)     The Secured Notes Obligations are secured by first priority security interests and liens on substantially all of the Debtors' property (collectively, the "Prepetition Liens" and the "Prepetition Collateral," as applicable), pursuant to "Security Documents" (as such term is defined and as set forth in the Indenture) (the "Secured Notes Collateral Documents," and together with the Indenture, the "Secured Notes Documents").

(c)     The Prepetition Liens are valid, binding, enforceable, non-avoidable and properly perfected liens on and security interests in the Prepetition Collateral.

(d)     No portion of the Secured Notes Obligations or Prepetition Liens is subject to any contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law, *provided, however,* that the Prepetition Liens shall be subject and subordinate only to (a) the Carve-Out, (b) the liens and security interests granted to secure the Adequate Protection Obligations (as defined below),

6

to the extent such liens and security interests attach to the Prepetition Collateral, and (c) valid, perfected, and unavoidable liens permitted under the Secured Notes Documents, to the extent such liens are permitted to be senior to the liens of the Secured Notes Agent on the Prepetition Collateral pursuant to the terms of the Secured Notes Documents.

(e)     The Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by such Debtors, wherever located, any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, and any proceeds of the Prepetition Collateral, in each case constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(f)     The initial budget, attached hereto as **Exhibit 1**, has been thoroughly reviewed by the Debtors, their management, and their advisors.  The Debtors, their management, and their advisors believe that such budget and the estimate of administrative expenses due or accruing during the period covered thereby were developed using reasonable assumptions, and based on those assumptions the Debtors believe there should be sufficient available assets to pay all administrative expenses due or accruing during the period covered thereby.

7.     *Release*.  The Debtors hereby waive any and all actions against, and hereby release, each of the Secured Notes Agent, the Secured Noteholders, and each of their respective shareholders, controlling persons, directors, agents, officers, subsidiaries, affiliates, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in their respective capacity as such (each such person or entity identified in this paragraph 7, a "Released Party" and, collectively, the "Released Parties") from any and all damages, losses,

settlement payments, obligations, liabilities, claims, actions, causes of action, or any challenge, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained, or required to be paid by an indemnified party of every nature and character arising prior to the Petition Date and to the extent related to the Secured Notes Documents, any documents related to the Secured Notes Documents, any aspect of the prepetition relationship among the Released Parties, any Debtor, or any other acts or omissions by the Released Parties in connection with the Secured Notes Documents, any documents related to the Secured Notes Documents, or any aspect of their prepetition relationship with any Debtor. For the avoidance of doubt, the Debtors' release under this paragraph 7 shall not prejudice the rights of non-Debtor parties under paragraph 29 of this Interim Order.

8.      *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The Debtors require access to use the Prepetition Collateral (including the Cash Collateral), on the terms set forth herein (including in the amount and in the manner set forth in the Budget (as defined below)), to permit, among other things, the satisfaction of the costs and expenses of administering these chapter 11 cases.

(c)     The terms of the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)     The terms of the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Secured Notes Parties and, pursuant to sections 105, 361, and 363

of the Bankruptcy Code, the Secured Notes Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code on the terms set forth herein.

(e)     The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (d).  Absent granting the interim relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  The use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order is in the best interest of the Debtors' estates.

9.     *Consent by the Secured Notes Parties.*  Subject to the terms of this Interim Order, the Secured Noteholders holding over 80% of the principal value of the Notes and the Secured Notes Agent have consented to the Debtors' use of the Prepetition Collateral (including the Cash Collateral) on the terms set forth herein (including as contemplated and limited by the Budget). For purposes of this Interim Order:  (a) the "Requisite Noteholders" has the meaning ascribed to it in the RSA; (b) Requisite Noteholders hold more than a majority in aggregate principal amount of the Secured Notes; and (c) a "Secured Notes Agent Objection" means an objection asserted by the Secured Notes Agent that complies in all respects with the Secured Notes Documents, including (i) the Secured Notes Agent's capacity as indenture trustee under the Indenture and subject to the terms of the Indenture (including, without limitation, section 7.05 thereof) as it relates to the Secured Notes Agent's authority to exercise any remedy, trust, or power available to or conferred on it under the Indenture, or (ii) the Secured Notes Agent's capacity as collateral agent under that Security Agreement dated July 21, 2014, among Light Tower Rentals, Inc., LTR Holdco, Inc. and LTR Shelters, Inc. and the Secured Notes Agent.  For the avoidance of doubt,

nothing contained herein shall be deemed or construed to enlarge or otherwise expand the Secured Notes Agent's rights and remedies under the Secured Notes Documents. Notwithstanding anything to the contrary contained herein or any other order entered or document filed in these chapter 11 cases, the Noteholders and the Debtors reserve all rights to exercise any right or remedy available under the Secured Notes Documents, the Bankruptcy Code, or applicable law in respect of any act or omission by the Secured Notes Agent that contravenes any Secured Notes Document or this Interim Order.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

10.     *The Motion.*  The Motion is GRANTED on an interim basis as set forth herein. Any objection to the Motion, as it pertains to the entry of this Interim Order, to the extent not withdrawn or resolved, is hereby overruled.

11.     *Authorization of Use of Cash Collateral and Prepetition Collateral.*

(a)     Subject to the terms and conditions set forth in, and in accordance with, this Interim Order, the Debtors are authorized to use Cash Collateral.  Except as expressly permitted in this Interim Order, nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom.  The Debtors' consensual use of Cash Collateral shall terminate immediately in accordance with and subject to the terms hereof.

(b)     During these chapter 11 cases, the Debtors will require access to the Cash Collateral to fund:  (i) working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in these chapter 11 cases, subject to the terms hereof and in accordance with a 13-week budget in form and substance acceptable to the Requisite Noteholders (the "Budget"); and (ii) the Adequate Protection Payments (as defined below) to the

10

Secured Notes Parties, as provided herein.  The initial budget, attached hereto as <u>Exhibit 1</u>, is the Budget as of the date hereof.  For the avoidance of doubt, the Budget is integral to, and forms a part of, this Interim Order.

(c)    Every three (3) weeks, by Thursday at 4:00 p.m. prevailing Central Time, the Debtors shall deliver to the Ad Hoc Committee and the Secured Notes Agent an updated, proposed 13-week budget.  Each proposed budget provided to the Ad Hoc Committee and the Secured Notes Agent shall be of no force and effect unless and until it is approved by the Requisite Noteholders and is not subject to a Secured Notes Agent Objection served on counsel for the Debtors and counsel for the Ad Hoc Committee and filed with this Court within three (3) business days' after receipt thereof.  Upon approval of such updated budget by the Requisite Noteholders and in the absence of a timely served and filed Secured Notes Agent Objection, such budget shall become the Budget.  Until such approval, the then-existing Budget shall remain in place.  The Secured Notes Agent acknowledges and agrees that the initial budget, attached hereto as <u>Exhibit 1</u>, would not have been subject to a Secured Notes Agent Objection.

(d)    Each week, by Thursday at 4:00 p.m. prevailing Central Time, the Debtors shall deliver to the Ad Hoc Committee and the Secured Notes Agent a variance report (a "<u>Variance Report</u>") setting forth the Debtors' actual cash flow for the preceding week compared to the Budget.  For purposes of this Interim Order, the Debtors shall ensure that at no time shall any of the following occur:  (i) an unfavorable variance of 15% or more from the "Total Operating Inflows" line item in the Budget, tested every week on a cumulative two (2) week basis (to begin on the third week); and (ii) an unfavorable variance of 15% or more from the "Total Operating Disbursements" line item in the Budget, tested every week on a cumulative two

11

(2) week basis (to begin on the third week) (the variances described in subparts (i) and (ii), each a "Non-Permitted Variance").

12.     *Adequate Protection Claims and Liens.*  In addition to all the existing security interests and liens granted to or for the benefit of the Secured Notes Parties in and with respect to the applicable Prepetition Collateral, including the applicable Cash Collateral, as adequate protection for, and to secure payment of an amount equal to the Collateral Diminution (as defined below), and as an inducement to the Secured Notes Parties to permit the Debtors' use of the Cash Collateral as provided for in this Interim Order, the Debtors hereby grant, solely to the extent of the Collateral Diminution:

(a)     Adequate Protection Claims.  To the Secured Notes Parties, an allowed superpriority administrative claim against each of the Debtors on a joint and several basis with priority over any and all other administrative claims against the Debtors now existing or hereafter arising in these chapter 11 cases, including all claims of the kind specified under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever, (the "Adequate Protection Claims"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors; *provided, however*, that the Adequate Protection Claims shall be subject and subordinate to the Carve-Out (as defined below).

(b)     Adequate Protection Liens.  Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, and in each case subject and

12

subordinate to the Carve-Out, the following security interests and liens are hereby granted to the

Secured Notes Agent, for its own benefit and the benefit of the Secured Notes Parties (all

property identified in clauses (i), (ii), and (iii) of this paragraph 12(b)) collectively referred to as

the "Adequate Protection Collateral" and all such liens and security interests, the "Adequate

Protection Liens"):

>    (i)    First Priority on Unencumbered Property.   A valid, binding,
> continuing, enforceable, fully-perfected, non-voidable first priority lien and/or
> replacement lien on, and security interest in, all of the Debtors' now owned and
> hereafter-acquired real and personal property, assets and rights of any kind or
> nature, wherever located, including, without limitation, all prepetition and
> postpetition assets of the Debtors' estates, and all products, proceeds, rents, and
> profits thereof, whether existing on or as of the Petition Date or thereafter
> acquired, that is not subject to (x) valid, perfected, non-avoidable, and enforceable
> liens in existence on or as of the Petition Date or (y) valid and unavoidable liens
> in existence for amounts outstanding as of the Petition Date that are perfected
> after the Petition Date as permitted by section 546(b) of the Bankruptcy Code
> (subparts (x) and (y), collectively, the "Unencumbered Property"); *provided*, that,
> subject to the entry of the Final Order, the Unencumbered Property shall include,
> and the Adequate Protection Liens shall attach to, any proceeds or property
> recovered in respect of any Avoidance Actions (but not the Avoidance Actions
> themselves).

>    (ii)    Liens Junior to Certain Existing Liens. A valid, binding,
> continuing, enforceable, fully-perfected, non-avoidable junior lien on and security
> interest in all of the Debtors' now owned and hereafter-acquired real and personal
> property, assets and rights of any kind or nature, wherever located, including,
> without limitation, all prepetition and postpetition assets of the Debtors' estates,
> and all products, proceeds, rents, and profits thereof, whether existing on or as of
> the Petition Date or thereafter acquired (other than the property described in
> clauses (i) or (iii) of this paragraph 12(b)), that is subject to (x) valid, perfected,
> and unavoidable liens in existence immediately prior to the Petition Date or
> (y) valid and unavoidable liens in existence immediately prior to the Petition Date
> that are perfected subsequent to the Petition Date as permitted by section 546(b)
> of the Bankruptcy Code, in each case which valid, perfected, and unavoidable
> liens are senior in priority to the Prepetition Liens (the liens, if any, described in
> (x) and (y), the "Other Secured Liens").  For the the avoidance of doubt, the Other
> Secured Liens shall not include any security interest or lien related to the ABL
> Facility.

>    (iii)    Liens Senior to Certain Existing Liens. A valid, binding,
> continuing, enforceable, fully-perfected first priority senior priming security
> interest in and lien on the Prepetition Collateral and all of the Debtors' now

owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Debtors' estates including all property defined as "collateral" under the Secured Notes Documents, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action and all proceeds of the foregoing; *provided* that such liens and security interests shall not prime the Other Secured Liens (if any).

(c)     "Collateral Diminution" means an amount equal to the diminution of the value of the Secured Notes Parties' interests in the Prepetition Collateral from and after the Petition Date for the use, sale, or lease of Prepetition Collateral (including Cash Collateral), subordination to the Carve-Out, and other decline in value arising out of the imposition of the automatic stay (the "Adequate Protection Obligations").

13.     *Fees and Expenses.*  As further adequate protection, the Debtors are hereby authorized and directed to pay (i) all outstanding prepetition and all postpetition reasonable and documented fees, costs, and expenses incurred or accrued by the Ad Hoc Committee, including, without limitation, such fees, costs, and expenses of Kirkland & Ellis LLP and other financial advisor(s) and/or diligence consultant(s), if any, retained by or on behalf of the Ad Hoc Committee (collectively, the "Ad Hoc Committee Payments"), and (ii) all outstanding prepetition and all postpetition reasonable and documented fees, costs, and expenses incurred or accrued by the Secured Notes Agent (collectively, the "Secured Notes Agent Payments", and, together with the Ad Hoc Committee Payments, the "Adequate Protection Payments"), including, without limitation, such fees, costs, and expenses of Reed Smith LLP and Emmet, Marvin & Martin, LLP.  None of the fees, costs, expenses, or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court, and no recipient of any such

14

payment shall be required to file any interim or final fee application with respect thereto or to provide time entries with respect to any related summary form invoices, which may be redacted for privileged, confidential, or proprietary information, and parties entitled to receive such payment of fees, costs, and expenses shall not be required to comply with the U.S. Trustee fee guidelines. The payment of the fees, costs, and expenses set forth in this paragraph 13 of this Interim Order shall be made no later than seven (7) calendar days after the Debtors receive such invoices therefor.

14.     *Reporting*.   During the period that this Interim Order or the Final Order is in effect, the Debtors shall provide the following to the Secured Notes Parties:

(a)     promptly, but in any event no later than the Friday of each calendar week (or, if such date is not a business day, the immediately preceding business day), a weekly report as of the last day of the preceding calendar week, in form and detail reasonably acceptable to the Requisite Noteholders, of all written demands or claims related to or asserting any liens in respect of property or assets of any Debtor (including liens imposed by law, such as landlords', vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' and other similar liens);

(b)     on a bi-weekly basis, a report of the Debtors' (i) aged accounts receivable and (ii) accounts payable listings as of the end of the preceding two (2) weeks consistent with the Debtors' historic past practices, in form and detail reasonably acceptable to the Requisite Noteholders.  For the avoidance of doubt, each of (i) and (ii) shall be provided within seven (7) days following the end of the previous two-week period;

(c)     beginning with the year-to-date period ended August 31, 2016, (i) a monthly and year-to-date income statement and balance sheet, each in form substantially similar

to the format used in prior interim quarterly reporting provided to the noteholders and (ii) monthly and year-to-date detail of capital expenditures.  For the avoidance of doubt, each of (i) and (ii) shall be provided within twenty-one (21) days following the end of the previous month;

(d)      (i) the Variance Report as provided in paragraph 11(d) of this Interim Order, and (ii) a statement every week setting forth in reasonable detail the cash balance for each deposit account of each of the Debtors (and if applicable, non-Debtors) as of the last business day of the previous week; and

(e)      such other reports and information as the Ad Hoc Committee, in consultation with the Secured Notes Agent, may reasonably request.

15.      *Other Covenants*.  The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the applicable "first day" order entered or to be entered substantially contemporaneously herewith.   Without limiting paragraph 14 of this Interim Order in any respect, the Debtors shall also comply with the reporting obligations contained in Secured Notes Documents, and the covenants (affirmative and negative) contained in the RSA, in each case as if such reporting provisions and covenants had been set forth herein in their entirety.

16.      *Disposition of Collateral*.  The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral without (a) the prior written consent of the Secured Notes Agent and the Requisite Noteholders (and no such consent shall be implied, from any other action, inaction or acquiescence by the Secured Notes Parties or an order of this Court, other than as expressly provided in the RSA), except for sales, transfers, leases or uses of Debtors' inventory in the ordinary course of their businesses or (b) an Order of the Bankruptcy Court, after notice and an opportunity for a hearing, pursuant to section 363 of the

Bankruptcy Code and Federal Rule of  Bankruptcy Procedure 6004.  Until such time as the Secured Notes Obligations have been paid in full in accordance with the terms of the applicable Secured Notes Documents, the Debtors shall (unless otherwise agreed between the Debtors and the Requisite Noteholders, and the Secured Notes Agent) remit, or cause to be remitted to the Secured Notes Agent, all proceeds of Prepetition Collateral, that are obtained outside the ordinary course of business, for application against the Secured Notes Obligations in accordance with the terms of the applicable Secured Notes Documents and this Interim Order.  The Debtors shall not, and shall not permit any of their affiliates to, use, sell or lease any material assets outside the ordinary course of business, or seek authority of the Court to do any of the foregoing, without the prior consent of the Requisite Noteholders (including as provided in the RSA), and the Secured Notes Agent.

17.    *Priority of Adequate Protection Liens and Adequate Protection Claims.*  Except to the extent of the Carve-Out, the Adequate Protection Liens and Adequate Protection Claims granted to the Secured Notes Parties pursuant to paragraphs 12(a) and 12(b) of this Interim Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under sections 363 or 364 of the Bankruptcy Code or otherwise; and the Debtors shall not create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) carriers', mechanics', operators', warehousemen's, repairmen's or other similar ordinary course liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations

17

and performance bonds; and (v) such other liens or security interests existing as of the Petition Date that are permissible under the Secured Notes Documents; *provided*, that (x) the Debtors shall provide prompt notice to the Secured Notes Agent of any postpetition liens or security interests on Prepetition Collateral or Adequate Protection Collateral that have a value of $50,000 or more separately or in the aggregate.  The Debtors admit, stipulate, and agree that, as of the Petition Date, they are not aware of any liens or security interests that fit within the purview of subpart (v) of the preceding sentence (other than certain protective liens on photocopiers).

18.     *Carve-Out*.  As used in this Interim Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Committee appointed in these chapter 11 cases pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Secured Notes Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Professional Fees in an aggregate amount not to exceed $1,000,000 incurred after the first business day following delivery by the Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or

otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Secured Notes Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and lead counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of any Termination Event (as defined below), stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

19.     *Payment of Compensation*.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, or of any person, or shall affect the rights of the Secured Notes Parties to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts.

20.     *Termination*.

(a)     Optional Termination Events.   Upon the occurrence of any of the following events, and upon four (4) business days following the delivery of a written notice by the Requisite Noteholders or the Secured Notes Agent (at the direction of the Requisite Noteholders in accordance with the Indenture in all respects or, if not at such direction, the delivery of such notice shall be subject to the same standard as a Secured Notes Agent Objection and, for the avoidance of doubt, the other provisions contained in paragraph 9 hereof), to (x) the Office of the U.S. Trustee, (y) the Debtors and proposed counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 (Attention:  Philip M. Abelson and Ehud Barak), and Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010 (Attention: Patricia B. Tomasco and Matthew D. Cavenaugh) and (z) counsel to the Committee (if any) of the occurrence of any of the below listed events, unless cured by the Debtors or

19

waived by the Requisite Noteholders or the Secured Notes Agent (at the direction of the Requisite Noteholders in accordance with the Indenture in all respects or, if not at such direction, such waiver shall be subject to the same standard as a Secured Notes Agent Objection and, for the avoidance of doubt, the other provisions contained in paragraph 9 hereof), the Debtors' consensual use of the Cash Collateral may be terminated (collectively, the "Optional Termination Events"):

(i)     the Final Order has not been entered by this Court within thirty-five (35) days after the Petition Date, unless such period has been extended by the Requisite Noteholders;[4]

(ii)    the failure by the Debtors to make any payment required under this Interim Order as and when due;

(iii)   the failure by the Debtors to comply with any covenant, agreement, or provision of this Interim Order, including, without limitation, timely delivery to the Ad Hoc Committee or Secured Notes Agent any of the documents or other information required to be delivered pursuant to this Interim Order or in the event such document or other information contains a material misrepresentation;

(iv)    any Debtor uses Cash Collateral to fund any payments in respect of prepetition claims other than (i) as permitted under this Interim Order, (ii) in accordance with, and solely to the extent authorized by, a "first day" or "second day" order that is consistent with the draft of such order provided to the Ad Hoc Committee before the Petition Date, or (iii) as otherwise expressly contemplated by the Budget or an order acceptable to the Requisite Noteholders, and in consultation with the Secured Notes Agent subject to a Secured Notes Agent Objection;

(v)     the occurrence of a Non-Permitted Variance;

(vi)    the Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Claims;

(vii)   a filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Secured Notes Obligations, Adequate Protection Obligations, or asserting any other cause of action against and/or with respect to the Secured Notes Obligations, Adequate Protection Obligations, the Prepetition

---

[4]   Wherever applicable in this Interim Order, any consent by the Requisite Noteholders or the Secured Notes Agent (whether for the extension of time or otherwise) shall be effective without further order of the Court.

Collateral securing the Secured Notes Obligations, or the Adequate Protection Collateral securing the Adequate Protection Obligations, or against any of the Secured Notes Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party); or

(viii)    the Debtors shall create, incur or suffer to exist any postpetition liens or security interests not otherwise permitted by this Interim Order (it being understood that any postpetition lien or security interest arising under or related to section 364 of the Bankruptcy Code are not otherwise permitted by this Interim Order), unless such postpetition liens or security interests have a value less than $50,000 in the aggregate at any one time.

(b)    <u>Automatic Termination Events</u>.  The Debtors' consensual use of the Cash

Collateral shall terminate automatically upon the occurrence of any of the following events (the

"<u>Automatic Termination Events</u>" and, together with the Optional Termination Events, the

"<u>Termination Events</u>"):

(i)    the Debtors' commencing, or participating in furtherance of, any solicitation of any chapter 11 plan unless it is the Plan or such other plan of reorganization acceptable to the Requisite Noteholders that complies with the RSA;

(ii)    entry of an order terminating or reducing the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(iii)    entry of an order charging any of the Prepetition Collateral or Adequate Protection Collateral under sections 506(c) or 552(b) of the Bankruptcy Code or any other principle in law or equity;

(iv)    any of these chapter 11 cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code;

(v)    entry of an order (or orders) granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code providing relief to any entity (or entities) other than the Secured Notes Parties in an amount greater than $10,000,000 in the aggregate with respect to the Prepetition Collateral or the Adequate Protection Collateral without the written consent of the Requisite Noteholders;

(vi)    the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers relating to the operation of the Debtors' businesses in these chapter 11 cases;

(vii)    the occurrence of the effective date in respect of the Plan;

21

(viii)   the entry of an order reversing, staying, vacating or otherwise modifying in any respect the terms of this Interim Order; or

(ix)   the termination of the RSA, other than the Debtors' termination in accordance with section 6(c)(i) thereof.

21.   *Remedies upon Occurrence of the Termination Date.* The Debtors shall promptly provide notice to the Secured Notes Agent (with a copy to counsel for the Committee (if any) and the U.S. Trustee) upon the occurrence of any acts or omissions that may give rise to a Termination Event. Upon the occurrence of (a) with respect to the Optional Termination Events, the date upon which such Optional Termination Event becomes effective, after taking into account the applicable cure or waiver period, and (b) with respect to the Automatic Termination Events, the date upon which such Automatic Termination Event becomes effective (such date described in (a) and (b), the "Termination Date"), (i) the Adequate Protection Obligations, if any, shall become immediately due and payable, and (ii) the Secured Notes Parties, upon five (5) business days' written notice to the Debtors, the Debtors' lead restructuring counsel, and the U.S. Trustee, may, absent further order of the Court entered within such five (5) business day period, exercise the rights and remedies available under the Secured Notes Documents, this Interim Order, or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect any amounts payable to the Secured Notes Parties, including, without limitation, the Secured Notes Obligations and the Adequate Protection Obligations. The automatic stay under section 362 of the Bankruptcy Code shall be deemed modified and vacated to the extent necessary to permit such actions. In any hearing regarding any exercise of rights or remedies, the only issues that may be raised by any of the Debtors in opposition thereto shall be (x) whether, in fact, the Termination Date shall have occurred as a result of an Optional Termination Event or Automatic Termination Event, and (y) the quantum of the Adequate Protection Obligations, and each of the

Debtors hereby waives any right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Secured Notes Parties set forth in this Interim Order or the Secured Notes Documents; *provided*, *however*, that, without limiting the effect of any provision of this Interim Order, the Debtors reserve the right to seek further use of the Cash Collateral without the consent of the Secured Notes Parties in accordance with sections 361 and 363 of the Bankruptcy Code. The delay or failure of the Secured Notes Parties to exercise rights and remedies under the Secured Notes Documents, this Interim Order, or applicable law shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the Secured Notes Documents. The Secured Notes Agent shall be entitled to receive and apply the payments or proceeds of the Prepetition Collateral and the Cash Collateral in accordance with the provisions of the Secured Notes Documents and in no event shall the Secured Notes Parties be subject to the equitable doctrine of *"marshaling"* or any other similar doctrine with respect to any of the Prepetition Collateral, the Adequate Protection Collateral, or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Secured Notes Parties under this Interim Order shall survive the Termination Date.

22.     *Limitation on Charging Expenses against Collateral.* No costs or expenses of administration which have been or may be incurred in these chapter 11 cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Secured Notes Parties, the Prepetition Collateral, or the Cash Collateral pursuant to sections 105(a) or 506(c) of

23

the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Requisite Noteholders and no such consent shall be implied from any other action, inaction, or acquiescence by the Secured Notes Parties.  Neither the Secured Notes Parties' consent to the Budget nor anything else contained herein shall be deemed or construed as agreement by the Secured Notes Parties to be surcharged under section 506(c) or any other provision of the Bankruptcy Code, applicable law, or equitable doctrine.

23.     *Payments Free and Clear.* Subject to the provisions of paragraph 29 of this Interim Order, any and all payments or proceeds remitted to the Secured Notes Agent on behalf of the Secured Noteholders, pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, upon entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code, or any similar principle of law or equity.

24.     *Section 552(b).*  The Secured Notes Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Secured Notes Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral.

25.     *Reservation of Rights.*  Notwithstanding any other provision hereof, the grant of adequate protection to the Secured Notes Parties pursuant hereto is without prejudice to the right of the Secured Notes Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.  Nothing herein shall be

24

deemed to waive, modify or otherwise impair the respective rights of the Secured Notes Parties, under the Secured Notes Documents, the RSA, or in equity or law, and the Secured Notes Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Secured Notes Documents, the RSA, and/or equity or law in connection with all Termination Events and Events of Default (as defined in the Secured Notes Documents and RSA and whether arising prior to or after the Petition Date).  The entry of this Interim Order and the grant of adequate protection to the Secured Notes Parties shall be without prejudice to the rights of the Debtors to, following the occurrence of the Termination Date, seek authority to use Cash Collateral without the consent of the Secured Notes Parties.

26.     *Modification of Automatic Stay.*  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (a) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to take all appropriate action to ensure that the Adequate Protection Liens granted thereunder are perfected and maintain the priority set forth herein, (b) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to this Interim Order, and (c) the implementation of the terms of this Interim Order.

27.     *Perfection of Adequate Protection Liens.*

(a)     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein including the Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, real property mortgage or aircraft security

agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Secured Notes Parties to the priorities granted herein.

(b)     Notwithstanding the foregoing, the Secured Notes Agent, acting on behalf of the Secured Noteholders, is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Secured Notes Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order.  If the Secured Notes Agent determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by the Secured Notes Agent, and the automatic stay shall be modified to allow such filings.

(c)     A certified copy of this Interim Order may, in the discretion of the Secured Notes Agent acting on behalf of the Secured Noteholders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording; *provided, however,* that the Debtors shall reimburse the Secured Notes Agent for the payment of any stamp, intangibles, recording or similar tax.

(d)     The Debtors shall execute and deliver to the Secured Notes Agent all such agreements, financing statements, instruments and other documents as such agent may

reasonably request to evidence, confirm, validate or perfect the applicable Adequate Protection Liens.

(e)    Effective upon entry of a Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Secured Notes Parties in accordance with the terms of the Secured Notes Documents or this Interim Order.

28.    *Reversal, Stay, Modification or Vacatur.*

(a)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect the rights and priorities of the Secured Notes Parties granted pursuant to this Interim Order. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral (including the Cash Collateral) or any Adequate Protection Obligations incurred, or Adequate Protection Liens granted, by Debtors (as applicable) hereunder, as the case may be, prior to the actual receipt of written notice by the Secured Notes Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Secured Notes Parties shall be entitled, as applicable, to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy

27

Code with respect to all applicable uses of the Prepetition Collateral (including the Cash Collateral) and all Adequate Protection Obligations and Adequate Protection Liens, as set forth herein.

(b)     The Adequate Protection Payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in these chapter 11 cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

29.     *Effect of Stipulations on Third Parties.*   As a result of the Debtors' review of the Secured Notes Documents and the facts related thereto, the Debtors have admitted, stipulated, and agreed to various matters as set forth in paragraph 6 above and shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleadings asserting a claim or cause of action arising out of or related to the Secured Notes Documents or any transactions or course of conduct related thereto.   The stipulations and admissions contained in this Interim Order, including, without limitation, paragraph 6 of this Interim Order, shall be binding upon the Debtors and any successor thereto in all circumstances.   Furthermore, the stipulations and admissions contained in this Interim Order, including, without limitation, paragraph 6 of this Interim Order, shall be binding upon all other parties in interest, including the Committee (if any) or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (a) the Committee (if any) or any other party in interest (including any Trustee), in each case, with requisite standing, has duly filed an adversary proceeding (in each case, subject to the limitations contained herein) challenging the validity, enforceability, priority, or extent of the Secured Notes Obligations or the liens on the Prepetition Collateral securing the Secured Notes Obligations or otherwise asserting or prosecuting any Avoidance

Actions or any other claims, counterclaims or causes of action, objections, contests or defenses related thereto (collectively, the "Claims and Defenses") against any Secured Notes Party or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Secured Notes Obligations or the Prepetition Collateral by no later than the date that is the earlier of (x) the later of (i) in the case of any such adversary proceeding filed by a party in interest with requisite standing other than the Committee, seventy-five (75) days after the date of entry of this Interim Order, (ii) in the case of any such adversary proceeding filed by the Committee, sixty (60) days after the appointment of the Committee, and (iii) any such later date agreed to in writing by the Secured Notes Agent and the Debtors, and (y) the last day for filing objections to the Plan (the time period established by the earlier of the foregoing clauses (x) and (y), the "Challenge Period"), and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding; *provided*, that, as to the Debtors, all such Claims and Defenses are irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding is timely and properly filed prior to the expiration of the Challenge Period, without further order of this Court (but subject to any amendment to the Challenge Period contained in the Final Order): (x) the Secured Notes Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these chapter 11 cases and any subsequent chapter 7 case; (y) the Secured Notes Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 6 of this Interim Order, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Secured Notes Obligations and the

Secured Notes Agent's liens on the Prepetition Collateral and the Secured Notes Parties shall not be subject to any other or further challenge by the Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period) with respect to the Debtor Stipulations.  If any such adversary proceeding is timely and properly filed prior to the expiration of the Challenge Period, the stipulations and admissions in paragraph 6 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other party in interest, including any Trustee, except as to any such findings and admissions that were successfully challenged in such adversary proceeding.  Nothing in this Interim Order vests or confers on any party, including a Committee or Trustee, standing or authority to pursue any cause of action, claim, defense, or other right belonging to the Debtors or their estates.

30. *Limitation on Use of Collateral.*

(a) Notwithstanding anything herein or in any other order of this Court to the contrary, no Prepetition Collateral (including the Cash Collateral), proceeds of the Prepetition Collateral, Adequate Protection Collateral, portion of the Carve-Out, or any other amounts or assets of the Debtors' estates now or hereafter acquired may be used directly or indirectly by any of the Debtors, the Committee, if any, or any trustee or other estate representative appointed in these chapter 11 cases or any successor cases or any other person (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) for any of the following actions or activities (the "Proscribed Actions"):

(i) to seek authorization to obtain liens or security interests that are senior to, or on a parity with, the liens granted under this Interim Order or the Final Order; or

(ii) to investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, against the Secured Notes Parties and each of their respective shareholders, controlling persons, directors, agents, officers, subsidiaries, affiliates, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (A) any Avoidance Actions, (B) any so-called "lender liability" claims and causes of action, (C) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the claims or liens granted under the Secured Notes Documents or this Interim Order, (D) any action seeking to invalidate, modify, reduce, expunge, disallow, set aside, avoid or subordinate, in whole or in part, the Secured Notes Obligations or the Adequate Protection Obligations, or (E) any action seeking to modify, impair, or adversely affect any of the rights, remedies, priorities, privileges, protections and benefits granted to any of the Secured Notes Parties (in each case, as applicable, including, claims, proceedings or actions that might prevent, hinder or delay any of their respective assertions, enforcements, realizations or remedies on or against the this Interim Order and the Final Order).

31

(b)     Notwithstanding anything to the contrary herein, advisors to the Committee, if any, may use up to $50,000 in the aggregate of the Carve-Out or Cash Collateral to investigate the claims and liens of the Secured Notes Parties prior to the expiration of the Challenge Period (the "Committee Investigation Budget").  Any and all claims incurred by the Committee related to or in connection with the foregoing other than up to the Committee Investigation Budget shall not constitute an allowed administrative expense claims (including, without limitation, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code) and shall not be satisfied by the Carve-Out or any Cash Collateral, and shall be satisfied solely from the unencumbered assets of the Debtors (if any) (the "Unencumbered Assets"), thereby reducing recoveries to the holders of unsecured claims (other than any deficiency claim held by any of the Secured Notes Parties); *provided*, *however*, that to the extent there are no Unencumbered Assets available to satisfy such claims, then such claims shall be automatically disallowed without further action by any party or Court order and shall not receive a recovery in these chapter 11 cases and any successor cases.

31.     *Binding Effect; Successors and Assigns.*  Except as otherwise expressly set forth herein, the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these chapter 11 cases, including, without limitation, the Secured Notes Parties, any Committee, and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Secured Notes Parties and the Debtors and their respective successors and assigns, *provided* that, except to the extent expressly set forth in this

Interim Order, the Secured Notes Parties shall have no obligation to permit the use of the Prepetition Collateral (including the Cash Collateral) or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor.

32.     *Limitation of Liability.*  In determining to permit the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order (or the Final Order) or the Secured Notes Documents, as applicable, none of the Secured Notes Parties, or any successor of any of the foregoing, shall be deemed to be in control of the operations of the Debtors or any affiliate (as defined in section 101(2) of the Bankruptcy Code) of the Debtors, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or any affiliate of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Furthermore, nothing in this Interim Order or the Secured Notes Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Notes Parties, or any successor of any of the foregoing, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any affiliate of the Debtors.

33.     *Proofs of Claim.*  Notwithstanding anything herein to the contrary or in any other order of this Court, the Secured Notes Parties will not be required to file proofs of claim in any of these chapter 11 cases or successor cases, and the Debtors' stipulations in paragraph 6 of this Interim Order shall be deemed to constitute a timely filed proof of claim.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including, without limitation administrative claims) in any of these chapter 11 cases or successor cases shall not

apply to the Secured Notes Parties with respect to the Secured Notes Obligations or the Adequate Protection Obligations.

34.    *Discharge Waiver.*    Other than pursuant to the Plan, the Adequate Protection Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in these chapter 11 cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Obligations have been indefeasibly paid in full in cash on or before the effective date of such confirmed plan of reorganization.    None of the Debtors shall propose or support any plan of reorganization (other than the Plan) or sale of all or substantially all of the Debtors' assets or entry of any confirmation order (other than with respect to the Plan) or sale order that is not conditioned upon the indefeasible payment in full in cash of the Adequate Protection Obligations on or prior to the earlier to occur of the effective date of such plan of reorganization or sale.

35.    *Final Hearing.*    The Final Hearing is set for September 30, 2016 at 1:30 p.m. (prevailing Central Time) before this Court.    Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections upon: (a) the Debtors, 2330 E. I-20 S. Service Rd., Odessa, Texas 79766; (b) proposed counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attention: Philip M. Abelson and Ehud Barak) and Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010 (Attention: Patricia B. Tomasco & Matthew D. Cavenaugh); (c) counsel to the Ad Hoc Committee, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654 (Attention: Anup Sathy, P.C. and Ross M. Kwasteniet); (d) counsel to the Secured Notes Agent, Reed Smith LLP,1201 Market Street, Suite 1500, Wilmington, Delaware 19801 (Attention: Kurt F. Gwynne and Emily K. Devan) (e) the Office of the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston,

Texas 77002; (f) the entities on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) or counsel to any statutory committee appointed in these chapter 11 cases; and (g) all parties entitled to notice pursuant to the Local Rules or otherwise, in each case to allow actual receipt by the foregoing no later than September 27, 2016 at 4:00 p.m. (prevailing Central Time) (the "Objection Deadline").  Any objection shall set forth in writing and with particularity the factual and legal bases of the objection.  If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

36.     *Survival.*

(a)     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any plan of reorganization in any of these chapter 11 cases, (ii) converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of these chapter 11 cases or any successor cases, or (iv) pursuant to which this Court abstains from hearing any of these chapter 11 cases or any successor cases.

(b)     The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the Secured Notes Parties, pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in these cases, in any successor cases, or following dismissal of these cases or any successor cases, and shall maintain their priority as provided by this Interim Order until all of the Secured Notes Obligations and the Adequate Protection Obligations have been indefeasibly paid in full.  The terms and provisions concerning the releases of the Secured Notes Parties shall continue in these chapter 11 cases, in any successor cases, following dismissal of these chapter 11 cases or any

35

successor cases, termination of this Interim Order, and/or the indefeasible repayment of the Secured Notes Obligations and the Adequate Protection Obligations.

37.     *No Right to Seek Modification.*  Unless requested by the Requisite Noteholders, the Debtors irrevocably waive any right to seek any modification or extension of this Interim Order (in whole or in part) without the prior written consent of the Requisite Noteholders, and no such consent shall be implied by any other action, inaction, or acquiescence of the Secured Notes Parties.

38.     *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

39.     *Joint and Several Liability*.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder.

40.     *Controlling Effects of Interim Order.*  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control.

41.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness (including, without limitation, under Bankruptcy Rule 6004(h)) of this Interim Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

42.     *Headings.*  The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

43.     *Effect of this Interim Order*.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry hereof.

44.     *Jurisdiction*. This Court shall retain jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

**Signed:  September 12, 2016.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## **Exhibit 1**

**Budget**

**Light Tower Rentals - Weekly Cash Flow Forecast**                                                                                                                      [Emergence]
*All amounts in USD*

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 29-Aug-16 | 5-Sep-16 | 12-Sep-16 | 19-Sep-16 | 26-Sep-16 | 3-Oct-16 | 10-Oct-16 | 17-Oct-16 | 24-Oct-16 | 31-Oct-16 | 7-Nov-16 | 14-Nov-16 | 21-Nov-16 | 29-Aug-16 |
| | 2-Sep-16 | 9-Sep-16 | 16-Sep-16 | 23-Sep-16 | 30-Sep-16 | 7-Oct-16 | 14-Oct-16 | 21-Oct-16 | 28-Oct-16 | 4-Nov-16 | 11-Nov-16 | 18-Nov-16 | 25-Nov-16 | 25-Nov-16 |
| | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* | *Forecast* |
| **Operating Inflows** | | | | | | | | | | | | | | |
| Rental Equipment & Related Services | 835,640 | 841,714 | 953,143 | 953,143 | 953,143 | 886,714 | 886,714 | 886,714 | 886,714 | 905,571 | 1,167,571 | 1,167,571 | 975,857 | 12,300,211 |
| Equipment Sales | - | - | - | - | - | - | 50,000 | - | - | - | - | - | - | 50,000 |
| Other - Inflows | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Inflows** | 835,640 | 841,714 | 953,143 | 953,143 | 953,143 | 886,714 | 936,714 | 886,714 | 886,714 | 905,571 | 1,167,571 | 1,167,571 | 975,857 | 12,350,211 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll & Benefits | 60,000 | 885,689 | 60,000 | 885,689 | 60,000 | 885,689 | 60,000 | 885,689 | 60,000 | 885,689 | 60,000 | 885,689 | 60,000 | 5,734,131 |
| Rental Equipment / Maintenance / Supplies / Fuel | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 298,893 | 3,885,606 |
| Corporate (Office / IT / Travel / Training) | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 82,880 | 1,077,437 |
| Other Payables | 74,835 | - | 74,835 | - | 74,835 | - | 74,835 | - | 74,835 | - | 74,835 | - | 74,835 | 972,855 |
| Sales Tax | - | - | 125,000 | 100,000 | - | - | - | 225,000 | - | - | - | 225,000 | - | 675,000 |
| Insurance | 301,275 | - | 150,000 | - | - | 73,698 | 150,000 | - | - | 498,592 | - | - | - | 1,173,566 |
| Rent | 61,071 | - | - | - | 61,071 | - | - | - | - | 61,071 | - | - | - | 183,213 |
| Utilities | 26,385 | 31,332 | 57,717 | 41,226 | 26,385 | 31,332 | 57,717 | 41,226 | 26,385 | 31,332 | 57,717 | 41,226 | 26,385 | 496,363 |
| **Total Operating Disbursements** | 905,339 | 1,373,628 | 849,324 | 1,483,522 | 604,063 | 1,447,326 | 724,324 | 1,608,522 | 542,992 | 1,933,291 | 574,324 | 1,608,522 | 542,992 | 14,198,171 |
| **OPERATING CASH FLOW** | (69,699) | (531,914) | 103,819 | (530,379) | 349,080 | (560,612) | 212,390 | (721,808) | 343,722 | (1,027,720) | 593,247 | (440,951) | 432,865 | (1,847,960) |
| **Non-Recurring Disbursements** | | | | | | | | | | | | | | |
| Restructuring Professional Fees [1] | 450,000 | - | - | - | - | 250,000 | - | - | - | 4,588,514 | - | - | - | 5,288,514 |
| Utility Deposit | 76,000 | | | | | | | | | (76,000) | | | | - |
| Emergence Use of Funds | | | | | | | | | | 1,200,000 | | | | 1,200,000 |
| Other Non-Recurring Disbursements | | | | | | | | | | | | | | - |
| **Total Non-Recurring Disbursements** | 526,000 | - | - | - | - | 250,000 | - | - | - | 5,712,514 | - | - | - | 6,488,514 |
| **NET CASH FLOW** | (595,699) | (531,914) | 103,819 | (530,379) | 349,080 | (810,612) | 212,390 | (721,808) | 343,722 | (6,740,234) | 593,247 | (440,951) | 432,865 | (8,336,474) |
| **Beginning Cash Balance** | 15,957,113 | 15,361,414 | 14,829,500 | 14,933,319 | 14,402,940 | 14,752,019 | 13,941,407 | 14,153,797 | 13,431,990 | 13,775,712 | 7,035,478 | 7,628,725 | 7,187,774 | 15,957,113 |
| Net Cash Flow | (595,699) | (531,914) | 103,819 | (530,379) | 349,080 | (810,612) | 212,390 | (721,808) | 343,722 | (6,740,234) | 593,247 | (440,951) | 432,865 | (8,336,474) |
| **Ending Cash Balance** | 15,361,414 | 14,829,500 | 14,933,319 | 14,402,940 | 14,752,019 | 13,941,407 | 14,153,797 | 13,431,990 | 13,775,712 | 7,035,478 | 7,628,725 | 7,187,774 | 7,620,639 | 7,620,639 |

Notes:
1. Assumes Debtors' professional fees paid at emergence are funded into escrow and paid on court approval